THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOYD DALE ALLEN, Defendant-Appellant.

Fourth District   No. 4—95—0156

Opinion filed June 2, 1997.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, and Michael Kornak, law student, for appellant.

Robert Jones, State's Attorney, of Rushville (Norbert J. Goetten, Robert

J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Following a bench trial, defendant Loyd Dale Allen was found guilty of five counts of disorderly conduct. He was fined $250 and sentenced to one year's probation and seven weekends in jail. Defendant appeals, contending that the State failed to prove beyond a reasonable doubt that his conduct provoked a breach of the peace, an essential element of the offenses. See 720 ILCS 5/26—1(a)(1) (West 1994). We affirm in part, reverse in part, and remand.

All five counts of disorderly conduct were premised on statements of a sexual or threatening nature allegedly spoken by defendant to minor boys. The complainants, T.H. and R.P., were 16 years old at the time of the incidents, while defendant was 47 years old.

The first incident (count I) occurred sometime in February 1993. T.H. testified that he and his friends were on the north side of the Rushville Square in Rushville, Illinois, when defendant parked nearby. Defendant asked T.H. why he had parked his car in front of defendant's house a few days earlier. Defendant then answered his own question, stating that he knew T.H. had attended a party next door and that defendant "knew [defendant's neighbors] were all gay." When T.H. denied attending the party, defendant responded that he would not hold it against T.H., "because he could suck [T.H.'s] dick better than any one of them guys." T.H. testified that defendant's comments "kind of scared me." T.H. walked away, and defendant did not follow. This was T.H.'s first contact with defendant.

The next three incidents (counts II through IV) apparently all occurred at the Rushville IGA, a grocery store where T.H. and R.P. worked. However, there was no evidence at trial regarding where count V occurred. Count II arose from an August 1993 encounter between defendant and R.P. R.P. testified that he was bagging groceries when defendant started talking to him. Defendant placed his arm on R.P. and said, "[Y]ou are good with your hands. I bet you are good with other things with your hands." Defendant also invited R.P. to his house. After this incident, defendant started coming to the IGA on an almost daily basis.

Count III was based on a November 1993 incident. Defendant told both T.H. and R.P. "that if [they] let anybody know or told anybody about what was going on that he could—he would take [them] down with him and start rumors" that they were "queer." Count IV arose from an incident that occurred shortly thereafter. As T.H. was leaving the Rushville IGA, defendant asked him "if [he] had learned

to swallow yet." Defendant then told T.H. that he knew what T.H. drove, where he lived, when he worked, and how "to get ahold of" T.H. whenever he wanted.

According to the information, the incident underlying count V occurred in December 1993 in Schuyler County, but the testimony at trial established neither the time nor place of this final incident. On this occasion, defendant asked R.P. where he could find T.H. When R.P. responded that T.H. was at a party, defendant mentioned "there were queers there." Defendant then asked R.P. if he or T.H. "could suck better."

Maxine Logan, the night manager of the Rushville IGA, testified that defendant would circle the store nightly until he walked past the carry-out boys. T.H. would work in the back room to avoid contact with defendant. On one occasion, R.P. was unwilling to leave the store alone because defendant had been circling the store. On another occasion, Logan overheard defendant tell R.P. to come to his workplace, "and we will do some things, but you cannot tell anybody."

Defendant denied making any of the statements. Defendant stated the only reason he knew R.P. was because R.P. had vandalized defendant's house. (R.P. admitted he was driving a couple of his friends around when his friends "egged" defendant's car and house.) Several of defendant's neighbors testified that defendant was a quiet man, who never invited people to his house.

■ As a preliminary matter, we note that defendant did not file a posttrial motion. Normally, the failure to raise an issue in a written posttrial motion results in a waiver of that issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130 (1988). However, one exception to this waiver rule is a challenge to the sufficiency of the evidence. *Enoch*, 122 Ill. 2d at 190, 522 N.E.2d at 1131-32. Defendant's claim that the State failed to prove a material allegation (*i.e.*, defendant's conduct provoked a breach of the peace) may be raised for the first time on appeal. *People v. Depper*, 256 Ill. App. 3d 179, 185, 629 N.E.2d 699, 703-04 (1994).

■ Defendant was charged under section 26—1(a)(1) of the Criminal Code of 1961, which provides that a defendant commits the offense of disorderly conduct when he knowingly "[d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26—1(a)(1) (West 1994). This court has held that defendant's conduct "must actually bring about a breach of the peace and not merely tend to do so." *People v. Bradshaw*, 116 Ill. App. 3d 421, 422, 452 N.E.2d 141, 142 (1983). But *cf. People v. Ellis*, 141 Ill. App. 3d 632, 633, 491 N.E.2d 61, 62 (1986)

("Although, under most circumstances, the statute probably does not require that a breach of the peace actually occur as a result of defendant's conduct, the relationship between the alleged conduct and the public order must be clearly shown"). It is not necessary that the act occur in public, only that defendant's actions disturb the public order. "A breach of the peace may as easily occur between two persons fighting in a deserted alleyway as it can on a crowded public street." *People v. Davis*, 82 Ill. 2d 534, 538, 413 N.E.2d 413, 415 (1980). The term "breach of the peace" defies easy definition.

> "The term 'breach of the peace' has never had a precise meaning in relation to specific conduct. Yet from its early common law origin to the present it has received a fairly well defined gloss. 'The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others.' *Cantwell v. State of Connecticut*, 310 U.S. 296, 308, [84 L. Ed. 1213, 1220, 60 S. Ct. 900, 905] (1940). The term connotes conduct that creates consternation and alarm. It is an indecorum that incites public turbulence; yet violent conduct is not a necessary element. The proscribed conduct must be voluntary, unnecessary, and contrary to ordinary human conduct. On the other hand, the commonly held understanding of a breach of the peace has always exempted eccentric or unconventional conduct, no matter how irritable to others. It seems unnecessary to add that whether a given act provokes a breach of the peace depends upon the accompanying circumstances, that is, it is essential that the setting be considered in deciding whether the act offends the mores of the community." *United States v. Woodard*, 376 F.2d 136, 141 (7th Cir. 1967).

Despite the elasticity of the term, the disorderly conduct statute has withstood first amendment challenges claiming that the statute is vague and overbroad. See, *e.g., People v. Raby*, 40 Ill. 2d 392, 398, 240 N.E.2d 595, 599 (1968), citing *Woodard*, 376 F.2d 136, with approval.

■ Here, defendant's disruptive conduct consisted of inappropriate or vulgar sexual remarks. Language that is vulgar or offensive does not necessarily breach the peace. See *Bradshaw*, 116 Ill. App. 3d at 422, 452 N.E.2d at 142 (defendant's shouting of obscenities outside a tavern was "nothing more than annoying" and did not constitute a breach of the peace); see also *People v. Douglas*, 29 Ill. App. 3d 738, 742-43, 331 N.E.2d 359, 363 (1975) (defendant did not breach the peace by shouting vulgarities at police officers). Generally, speech cannot be criminalized simply because it is offensive. The State contends, however, that defendant's remarks constituted "fighting words," which are not afforded first amendment protection.

" 'There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.' " *Beauharnais v. Illinois*, 343 U.S. 250, 255-56, 96 L. Ed. 919, 926-27, 72 S. Ct. 725, 730-31 (1952), quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72, 86 L. Ed. 1031, 1035, 62 S. Ct. 766, 769 (1942). "Fighting words" are "personally abusive epithets which, when addressed to an ordinary citizen, as a matter of common knowledge, are inherently likely to provoke violent reaction." *People v. Heinrich*, 104 Ill. 2d 137, 145, 470 N.E.2d 966, 970 (1984), citing *Cohen v. California*, 403 U.S. 15, 20, 29 L. Ed. 2d 284, 291, 91 S. Ct. 1780, 1785-86 (1971). Thus, fighting words by definition provoke a breach of the peace, such that they satisfy a necessary element of disorderly conduct.

■ Were defendant's remarks fighting words? The victims, T.H. and R.P., did not respond violently to defendant's remarks. However, words need only be *likely* to incite violence, not actually produce violence, to qualify as fighting words. See *People of the City of Pontiac v. Klein*, 67 Mich. App. 556, 558, 242 N.W.2d 436, 437-38 (1976) (criticizing the term "fighting words," because "many members of society are not fighters"). Defendant's remarks consisted of crude sexual overtures. He spoke no abusive epithets, although he insinuated that T.H. and R.P. were "queer," an insinuation many people would find offensive. (The record does not reveal the sexual orientation of the victims.) The parties have not cited, nor have we been able to discover, any case law where crude sexual propositions have been found to breach the peace.

Other forms of harassing or threatening language, however, have been found to breach the peace, even in the absence of abusive epithets. In *In re D.W.*, 150 Ill. App. 3d 729, 730-31, 502 N.E.2d 419, 420-21 (1986), this court held that the evidence was sufficient to support a finding that a minor committed disorderly conduct where the minor told a classmate that unless he paid the $5 he owed the minor by lunchtime, the minor would "kick [his] butt." In *Davis*, the defendant entered the home of an 81-year-old woman (it was disputed whether the defendant was invited). The woman had previously sworn out a complaint against defendant's brother. The defendant waved sheets of paper at the woman and said, " 'If [my brother goes to jail], Miss Pearl, you know me.' " *Davis*, 82 Ill. 2d at 536, 413 N.E.2d at 415. The supreme court held that the defendant's vague

threat fell squarely within the conduct proscribed by the disorderly conduct statute, which was intended to guard against " 'an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification.' " *Davis*, 82 Ill. 2d at 538, 413 N.E.2d at 415, quoting Ill. Ann. Stat., ch. 38, par. 26—1, Committee Comments, at 149 (Smith-Hurd 1977). Neither *D.W.* nor *Davis* discussed whether the threats were fighting words.

Here, count III was premised on defendant's threat to "take [R.P. and T.H.] down with [defendant]" and to start rumors that R.P. and T.H. were "queer." Defendant argues that only threats of immediate physical harm can constitute disorderly conduct. We disagree. Threats to destroy a reputation can violate a person's right not to be molested or harassed without justification, and *Davis* and *D.W.* make clear that the threatened harm need not be immediate. Defendant's threat, coupled with provocative language, was a form of mental and sexual harassment. We find the evidence sufficient to support a conviction on count III.

■ We further find the evidence sufficient to support convictions on counts I, II, and IV. These counts were not based upon overt threats, but upon unwelcome and offensive sexual remarks that were equally threatening. Sexual harassment is of such slight social value that it is not afforded first amendment protection. See *Trayling v. Board of Fire & Police Commissioners*, 273 Ill. App. 3d 1, 14, 652 N.E.2d 386, 395 (1995). Defendant's remarks did not convey information but were simply lewd conduct, albeit verbal conduct. Lewd conduct may constitute disorderly conduct depending on the surrounding circumstances. See, *e.g., People v. Duncan*, 259 Ill. App. 3d 308, 310-11, 631 N.E.2d 803, 804 (1994) (defendant provoked a breach of the peace by urinating in public). One relevant circumstance is the young age of the victims. In determining whether conduct provokes a breach of the peace, it is appropriate to consider the status of the victim. See *People v. Trester*, 96 Ill. App. 3d 553, 555, 421 N.E.2d 959, 960-61 (1981) (abusive language directed at police officer did not establish disorderly conduct because police officers have a responsibility to exercise great restraint when dealing with the public); *Davis*, 82 Ill. 2d at 537-38, 413 N.E.2d at 415 (fact that victim was an 81-year-old invalid was one of the surrounding circumstances supporting a finding of disorderly conduct). Sexual remarks that an adult might find merely annoying may become alarming and disruptive when directed at minors.

Defendant's remarks may not have incited violence, but it is clear that they disturbed the public order. T.H. hid in the back room of his workplace to avoid contact with defendant, while R.P. was

afraid to leave work alone. The victims' ability to work and appear in public was infringed by defendant's pattern of harassment.

■ We reverse defendant's conviction on count V because the evidence failed to establish where or when the conduct underlying count V occurred. On the date of trial, November 1994, venue was a material allegation that was required to be proved beyond a reasonable doubt along with the other elements of the offense, *i.e.*, the State was required to prove that the county where prosecution was brought was the county in which the offense occurred. *People v. Adams*, 161 Ill. 2d 333, 341-42, 641 N.E.2d 514, 518 (1994). The State's complete failure to prove venue is fatal to a judgment of conviction, and the issue may be considered for the first time on appeal. See *People v. Carroll*, 260 Ill. App. 3d 319, 328, 631 N.E.2d 1155, 1161 (1992). We note that section 1—6(a) of the Criminal Code of 1961 has now been amended so the State is no longer required to prove during trial that the offense occurred in any particular county in this state. Pub. Act 89—288, eff. August 11, 1995 (1995 Ill. Laws 3337), amending 720 ILCS 5/1—6(a) (West 1994).

For the foregoing reasons, we affirm defendant's convictions on counts I through IV. We reverse defendant's conviction on count V. Because we are reversing defendant's conviction on count V, and because defendant received a single, undivided sentence on all five counts, we remand for resentencing.

Affirmed in part and reversed in part; cause remanded.

McCULLOUGH and KNECHT, JJ., concur.