THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. G. WAYNE DAVIS, Defendant-Appellant.

Third District    No. 3—96—0781

Opinion filed August 1, 1997.

Gary L. Morris (argued), of Peoria, for appellant.

Stewart Umholtz, State's Attorney, of Pekin (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, and Richard Leonard (argued), of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Defendant, G. Wayne Davis, was charged by information with two counts of disorderly conduct (720 ILCS Ann. 5/26—1(a) (Michie 1993)), a Class C misdemeanor. Following a jury trial, defendant was found guilty of one count and acquitted on one count. By agreement of the parties, the matter proceeded immediately to sentencing and the trial court sentenced defendant to a $300 fine, 10 days in the county jail, with no day-for-day good-time credit, and one year's probation. The trial court denied defendant's motion to stay sentence and remanded defendant immediately into the custody of the sheriff to serve the sentence. Defendant filed an immediate notice of appeal and an emergency motion for stay of execution of judgment. This court stayed the enforcement of 5 days of the 10-day sentence.

On appeal, defendant alleges reversible error on the following issues: (1) he was not proven guilty beyond a reasonable doubt of disorderly conduct; (2) the trial court abused its discretion in sentencing him to serve time in the county jail; and (3) his right to due process was violated by the trial court's denial of his statutory right to credit on his jail sentence for good behavior. For the following reasons, we affirm defendant's conviction and sentence and reverse the trial court's ruling denying defendant credit for good behavior.

## FACTS

This matter concerns a long-running feud between two commuters who, despite their mutual animosity, both continued to travel the same route at the same time each morning on their way from their homes in Delavan, Illinois, to their work in Peoria, Illinois.

At trial, the complainant, Beverly Larson, testified that beginning in October 1995 defendant began to "harass" her on her commute to work each morning by doing such things as tailgating her car with his, positioning his car in front of hers while travelling down a two-lane road and then slowing down so that she could not pass, and following her to work, even to the point of running a red light to keep up with her. On one occasion, she returned to her car after work to find a note on her windshield, written by the defendant, which criticized her driving habits.

As to count I of the information, complainant testified that on the morning of January 19, 1996, she was travelling her usual route to work when she stopped to assist a stranded motorist whom she recognized as a friend. As complainant was getting in her car to continue on her way to work, she recognized defendant's car pass her travelling at about 60 miles per hour within the flow of traffic. She waited until defendant had passed out of sight before she proceeded on her way. As she rounded a curve in the road a short distance from where she had stopped to help her friend, she discovered that defendant had "slowed way down" as if to wait for her to catch up with him.

Complainant quickly caught up with defendant, although she slowed her car so as to maintain approximately two car lengths between their cars. Soon both cars approached a controlled intersection. According to complainant's testimony:

> "A. When we got to Route 9, there was a lot of traffic and I got stopped behind him at the stop sign. There's a median to the left and a right turn lane that goes to the right. There were cars in the right turn lane and [defendant] was in front of me and my vehicle was behind his and there was a car coming up behind me. He got out of his vehicle and came back to my car. ***
>
> * * *
>
> A. I locked my doors real quick and rolled my windows up. He said, 'I'm going to be down where you work today,' and I shrugged my shoulders like this. He said 'I want you to stop tailgating me and stop harassing me.' I cracked my window and said 'Just get back in your car and go to work.' I said, 'I'm not tailgating you.' I said 'get back in your car and go to work.' He said some other things, and I said, 'Don't ever leave a note on my car again.' He said, 'Lady, I can go where ever I want and do whatever I want.' "

According to complainant, defendant walked back to his car and drove away after she picked up her car phone as if to place a call. Complainant further testified that defendant spoke in a loud voice, but was not yelling, that he used no obscenities, and that she could not recall him using any hand gestures. She testified that she was very shaken by the encounter.

Defendant's testimony concerning the incident was as follows:

> "A. When we got to the intersection *** of Route 9 and Springfield Road *** she was tailgating me and following me to[o] close, and I got out and told her. ***
>
> Q. So you stopped at the intersection; is that correct?
>
> A. Correct.
>
> Q. What did you do?
>
> A. Well, I got out of my car and tried to reassure her that I was

not going to follow her that morning because I had to go very close to where she parked her car. I didn't know where she worked, but I knew where she parked her car, and I tried to reassure her that I was not following her and I tried to tell her why don't you quit tailgating; just go away and leave me alone. This has been going on for months.

Q. Were those your exact words?

A Yes.

\* \* \*

Q. And did she say anything in response?

A. She said that—she seemed very upset and yelled out 'I'm going to get you. I'm going to get you.'

Q. And did you make any response?

A. No, I left. \*\*\* She was getting very upset. She refused to talk to me. There was no point in going any further."

The jury convicted defendant of disorderly conduct based upon this incident.

Count II was based upon an incident that occurred on February 8, 1996. According to complainant's testimony, defendant overtook her car on the two-lane road and alternatively sped up and slowed down as the two proceeded toward the interstate leading into Peoria. After the two cars merged with interstate traffic, complainant passed defendant. However, defendant soon overtook complainant, and as their cars were passing, defendant took complainant's photograph. The jury acquitted defendant of the charge of disorderly conduct on count II.

In rebuttal, the People put on testimony from a witness who testified that defendant had tailgated her while driving the same route from Delavan to Peoria.

Following the jury verdict, defendant waived a presentence report and requested that the trial court immediately proceed to sentencing. The People offered no evidence at sentencing. The defendant testified that he had no criminal record, was married, and operated his own business selling dental equipment. The People sought the maximum sentence, including 30 days' incarceration in the county jail, justifying the request by stating that the defendant's conduct was egregious and opining that the defendant had committed perjury in his trial testimony.

The trial court announced that the sentence imposed was based upon the severity of the offense, the fact that the incident was part of a "pattern of harassment" and the defendant's apparent lack of remorse.

Following the suggestion of the assistant State's Attorney, the judge announced that defendant would be required to serve the entire

10-day sentence and he would receive no credit for "good time." Defendant's motion to stay imposition of sentence was denied, and defendant was remanded to the immediate custody of the sheriff. Defense counsel did not file a posttrial motion but, instead, filed an immediate appeal and an emergency motion seeking a stay of the imposition of sentence. This court granted the emergency motion, and the defendant was released from the county jail after serving five days.

## ANALYSIS

■ Defendant first maintains on appeal that he was not proven guilty beyond a reasonable doubt of the charge of disorderly conduct. Defendant was charged under section 26—1(a)(1) of the Criminal Code of 1961, which provides that a defendant commits the offense of disorderly conduct when he knowingly "[d]oes any act in such [an] unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS Ann. 5/26—1(a)(1) (Michie 1993).

■ Defendant maintains that his actions at the intersection on the morning of January 19, 1996, could neither alarm or disturb another person, nor constitute a breach of the peace. We disagree. When assessing the sufficiency of the evidence of a criminal offense, a court of review must ask whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to convince any rational trier of fact that the elements of the offense have been proved beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). We believe that the evidence here sufficed to uphold defendant's conviction.

■ First, the evidence, when viewed in the light most favorable to the prosecution, establishes that defendant knowingly committed an act in an unreasonable manner so as to alarm or disturb another, when he stopped his car in the roadway, thus blocking complainant's passage and essentially trapping her in her car while he approached her. Complainant testified that she was alarmed and disturbed by defendant's action. Under the particular circumstances of the past history these two individuals had accumulated, any rational trier of fact could easily conclude that the complainant was alarmed or disturbed by defendant's actions.

Likewise, the evidence, when viewed in the light most favorable to the prosecution, establishes a breach of the peace. Although there is no evidence to suggest that defendant made overt threats against claimant or used profane or abusive language, it is well settled that a breach of the peace can occur even in the absence of such actions or language. See *People v. Davis*, 82 Ill. 2d 534 (1980); *People v. Allen*, 288 Ill. App. 3d 502 (1997); *In re D.W.*, 150 Ill. App. 3d 729 (1986).

In *Davis*, the defendant entered the home of an 81-year-old woman (it was disputed whether the defendant was invited). The woman had previously sworn out a complaint against the defendant's brother. The defendant waived sheets of paper at the woman and said, " 'If [my brother goes to jail], Miss Pearl, you know me.' " *Davis*, 82 Ill. 2d at 536. The supreme court held that the defendant's vague threat fell squarely within the conduct proscribed by the disorderly conduct statute, which was intended to guard against " 'an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification.' " *Davis*, 82 Ill. 2d at 538, quoting Ill. Ann. Stat., ch. 38, par. 26—1, Committee Comments, at 149 (Smith-Hurd 1977).

We find *Davis* to be particularly instructive. In *Davis*, the defendant intruded upon the personal space of the complainant and made a statement, which, if taken out of the context of the parties' prior relationship, would not have seemed particularly menacing. However, the context of the parties' prior relationship, *i.e.*, complainant's swearing out a complaint against the defendant's brother, and the location of the confrontation raised the actions and words of the defendant to the level of a breach of the peace.

Likewise, in the matter *sub judice*, defendant's actions blocking complainant's way with his car, forcing her to remain behind him in her car, approaching her car on foot, and forcing her to listen to his comments about their disagreements and her driving habits, placed in the context of their previous relationship, was a form of harassment sufficient to constitute a breach of the peace. *Davis*, 82 Ill. 2d at 538. We find, therefore, that defendant was proven guilty beyond a reasonable doubt of the offense of disorderly conduct.

■ We next address defendant's contention that his sentence was excessive. It is well settled that the standard to be applied in determining whether a sentence is excessive is whether the trial judge abused his or her discretion in imposing it. *People v. La Pointe*, 88 Ill. 2d 482 (1981). A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Cabrera*, 116 Ill. 2d 474, 493-94 (1987). It is not the function of a reviewing court to serve as a sentencing court (*People v. Perruquet*, 68 Ill. 2d 149 (1977)), nor should a reviewing court substitute its judgment for that of the trial court merely because it would have balanced the appropriate factors differently. *People v. Streit*, 142 Ill. 2d 13 (1991). Moreover, it is well settled that it is presumed that a sentencing judge considered evidence offered in mitigation. *People v. Sawyer*, 139 Ill. App. 3d 383 (1985).

After carefully reviewing the record, we cannot say that the trial court abused its discretion in sentencing defendant to serve 10 days in the county jail. Although it is difficult to determine from the record the exact nature of the weighing of aggravation and mitigation exercised by the trial court, and we might have balanced the appropriate factors differently, we cannot say that the sentence was manifestly disproportionate to the nature of the offense. The maximum penalty for disorderly conduct is a fine of $500 and incarceration in the county jail for 30 days. 720 ILCS Ann. 5/26—1(b) (Michie 1993). Defendant's sentence was well within the range for the offense. *People v. Menssen*, 41 Ill. App. 3d 766 (1976).

■ Defendant lastly maintains that the trial court's order denying him day-for-day credit for good behavior was erroneous. The People contend defendant waived this issue by not raising it before the trial court. However, in *People v. Nixon*, 278 Ill. App. 3d 453 (1996), and *People v. Scott*, 277 Ill. App. 3d 565 (1996), this court held that the waiver rule would not be applied to deny a defendant his clear, statutory right. See also, *People v. Bailey*, 235 Ill. App. 3d 1 (1992) (good behavior allowance is a right afforded by statute that cannot be waived by a failure to object at trial or in a posttrial motion). We continue to adhere to that holding.

We agree with the defendant's contention that his clear statutory right to credit for good behavior was violated by the trial court's order. Section 3 of the County Jail Good Behavior Allowance Act (the Act) (730 ILCS Ann. 130/3 (Michie 1993)) mandates that persons sentenced to county jail, shall be entitled to day-for-day credit for good behavior, unless the defendant: (1) inflicted physical harm upon another in committing the offense for which he is confined; (2) is serving a mandatory minimum sentence; (3) is sentenced for a felony to probation or conditional discharge where the condition is to serve a sentence of periodic imprisonment; or (4) is sentenced under an order of court for civil contempt. Here, it is abundantly clear that none of the exceptions enumerated in the Act apply. The trial court, therefore, clearly exceeded its authority by including in its order a finding denying defendant day-for-day credit under the Act.

Defendant maintains that the circumstances surrounding the imposition of his sentence, *i.e.*, the denial of good-time credit at the apparent prompting of the assistant State's Attorney and the immediate imposition of the sentence, suggests something untoward on the part of the assistant State's Attorney and the trial judge. We do not believe the record supports the defendant's claim, however, and we do not expect to see such a clear contravention of the Act in the future.

For the reasons stated, the judgment of the circuit court of Tazewell County is affirmed. That portion of the order denying defendant day-for-day credit for good behavior is reversed. The cause is remanded to the circuit court to vacate that portion of the order.

Affirmed in part, reversed in part and remanded with directions.

McCUSKEY and MICHELA, JJ., concur.