**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 27, 2011[*]
Decided July 27, 2011

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-3557

| | |
|---|---|
| McHENRY P. LARSEN, <br>     *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 09 C 6668 |
| ELK GROVE VILLAGE, ILLINOIS, et al., <br>     *Defendants-Appellees*. | Harry D. Leinenweber, <br> *Judge.* |

**O R D E R**

Police in Elk Grove Village, Illinois, arrested McHenry Larsen without a warrant after a former tenant complained that he was stalking her. Prosecutors eventually dismissed the misdemeanor charges of disorderly conduct, prompting Larsen to sue the municipality and two of its officers under 42 U.S.C. § 1983 and state law. Larsen claimed that he was

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

arrested without probable cause, but at summary judgment the district court concluded that the undisputed evidence established the validity of the arrest. We affirm the judgment.

For two weeks Larsen ducked telephone calls from Officers Froelich and Gustafson, who were investigating the stalking allegations. Then on January 29, 2008, after his lawyer called Froelich to say he would "turn himself in," Larsen went voluntarily to the Elk Grove police station. He was arrested, processed, and released. His accuser, Sarah Dilorenzo, signed a complaint that day alleging that Larsen was harassing her "by showing up at her residence, telephoning, sending e-mails and delivering gifts to her residence . . . in such an unreasonable manner as to alarm and disturb" her. Yet despite this sworn statement, Larsen alleged in his pro se complaint that Froelich or Gustafson, or both, had intentionally included false and incomplete information in their investigative reports in order to initiate and maintain bogus charges. He insisted that his arrest and prosecution had violated the Fourth Amendment, and he also included state claims for malicious prosecution and intentional infliction of emotional distress. The defendant Gustafson was never served in the district court, and on appeal Larsen concedes that his claims against Gustafson are dismissed. The district court tried several times to recruit counsel, but Larsen elected to proceed alone after his third lawyer withdrew because of disagreements over litigation strategy.

Six months before that lawyer withdrew, he and defense counsel had told the district court during a status hearing that further discovery was unnecessary. The defendants then moved for summary judgment, and in support of that motion they submitted an affidavit from Froelich, reports from the police departments in Elk Grove and nearby Schaumburg, and Dilorenzo's complaint. According to Froelich, he learned during the investigation that Dilorenzo and her boyfriend had first contacted the Schaumburg and Elk Grove police in December 2007 and reported that Dilorenzo was being harassed by Larsen, her former landlord. Dilorenzo had said she rejected Larsen's romantic advances two months earlier, which sparked a barrage of e-mails and telephone calls despite her demands that he stop. Dilorenzo suspected that Larsen was following her, because he had reported her whereabouts to her ex-husband and she had seen him near her boyfriend's house in Schaumburg. Before handing the investigation to the police in Elk Grove, where Dilorenzo lives, a Schaumburg officer took a report, called Larsen on December 4, and warned him not to contact Dilorenzo or her boyfriend. Froelich explained that Dilorenzo had recontacted the Elk Grove police in January 2008 and said that Larsen was still contacting her and twice had shown up at her home uninvited. She added that she was alarmed by his actions and feared for her safety. In his affidavit Froelich said he tried calling Larsen several times and left a business card at his residence, and only then did the lawyer call on Larsen's behalf. Seven months later, Froelich explained, Dilorenzo announced that due to a pattern of burdensome

continuances by Larsen she no longer wished to proceed with the case, and so the circuit court had entered an order of nolle prosequi upon the state's motion.

In opposing summary judgment, Larsen countered that the police reports appeared fabricated and accused the defendants of withholding additional reports and a recording of Larsen's telephone conversation with a Schaumburg officer. Larsen denied part of the narrative in the police reports but did not offer an alternate version of events, and much of what he disputed was irrelevant to the determination of probable cause. He asked for time to conduct further discovery to investigate Froelich's credibility.

In ruling for the defendants on the federal and state claims, the district court concluded that the undisputed evidence established that Froelich had probable cause to arrest Larsen for disorderly conduct. The court noted that, although Larsen disputed some of the police reports' content, he offered no evidence to create a genuine issue of fact regarding Froelich's reliance on Dilorenzo's information. The court rejected as baseless Larsen's speculation about the authenticity of the police reports.

On appeal Larsen principally contends that the district court erred by not allowing him to reopen discovery before ruling on the defendants' motion. Essentially he speculates that further discovery might have allowed him to establish that the officers falsified their police reports and that Froelich lied in his affidavit. We reject this argument.

The federal rules do not require that discovery always be complete (or even underway) before summary judgment can be granted. FED. R. CIV. P. 56; *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648 (7th Cir. 2006); *Brill v. Lante Corp.*, 119 F.3d 1266, 1275 (7th Cir. 1997); *Am. Nurses' Ass'n v. State of Illinois*, 783 F.2d 716, 729 (7th Cir. 1986). If a party—even a pro se litigant—needs further discovery to respond to a motion for summary judgment, he can file a motion under Rule 56(d) (formerly Rule 56(f), *see* FED. R. CIV. P. 56 (effective Dec. 1, 2010)) explaining the reasons that he cannot present evidence essential to his opposition. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010); *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008); *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006); *Allen v. Martin*, 460 F.3d 939, 943 (7th Cir. 2006). In his response Larsen cited Rule 56(f) and asked for time to conduct discovery, but that request was prompted only by speculation that unnamed witnesses, whom Larsen said he had not yet located, would have helpful information. This request fell short because Larsen failed to specify the information that he hoped to discover. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 885-86 (7th Cir. 2005) (affirming district court's denial of request for additional depositions because request was "based on nothing more than mere speculation and would amount to a fishing expedition"); *Woods v. City of Chicago*, 234 F.3d 979, 990-91 (7th Cir. 2000); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000).

With his discovery argument out of the picture, it is unclear whether Larsen still disagrees with the district court's analysis of his claims. Even if he does, however, we agree with the district court that the undisputed evidence establishes that the defendants had probable cause to arrest Larsen for disorderly conduct. The existence of probable cause bars a claim under § 1983 for false arrest, and the plaintiff carries the burden of establishing the absence of probable cause. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 301-02 (7th Cir. 2011); *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009). Probable cause exists when the facts and circumstances known to the arresting officers would lead a reasonable person to believe that the suspect committed a crime. *Jones v. Clark*, 630 F.3d 677, 684 (7th Cir. 2011); *Wagner v. Wash. Cnty.*, 493 F.3d 833, 836 (7th Cir. 2007). The officer may rely on information provided by a witness or victim if the officer reasonably believes that the witness is credible. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007); *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006).

In Illinois, disorderly conduct occurs when a person knowingly commits "any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). Directly bothering or harassing other people can justify an arrest and conviction for disorderly conduct. *People v. Tingle*, 665 N.E.2d 383, 389 (Ill. App. Ct. 1996); *see, e.g., People v. Davis,* 413 N.E.2d 413, 415 (Ill. 1980); *Korbelik v. Staschke*, 596 N.E.2d 805, 808 (Ill. App. Ct. 1992). Larsen produced no evidence contradicting Froelich's statement that he knew about Dilorenzo contacting the police and saying she feared for her safety. Larsen may dispute the accuracy of what Dilorenzo said, but his assertions that her information (or the police account of that information) was false did not create a material issue of fact. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010); *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702-03 (7th Cir. 2010); *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004). And those assertions certainly were not enough to dispute that Froelich reasonably believed Dilorenzo's accusations when he arrested Larsen. Dilorenzo's signed complaint, stating that Larsen's contact alarmed and disturbed her, also confirms Froelich's account of the events. Froelich's knowledge that Larsen had repeatedly called, e-mailed, and visited Dilorenzo, after being warned by a Schaumburg officer not to contact her, supports the conclusion that Froelich had probable cause to arrest Larsen for disorderly conduct. *See People v. Allen*, 680 N.E.2d 795, 799-800 (Ill. App. Ct. 1997); *People v. Davis*, 683 N.E.2d 1260, 1262-64 (Ill. App. Ct. 1997).

As for Larsen's claims under state law, the existence of probable cause also defeats the possibility of malicious prosecution. *See Holmes*, 511 F.3d at 681-82; *Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 319 (Ill. Ct. App. 2006). Moreover, to establish intentional infliction of emotional distress, he would need evidence that (1) the defendants' conduct was extreme and outrageous, (2) they knew there was a high probability that their actions would cause severe emotional distress, and (3) their conduct in fact caused severe emotional

distress. *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010); *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992). Larsen offered no evidence supporting the existence of truly extreme and outrageous conduct. To satisfy this element, a defendant's conduct must be "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 626 (7th Cir. 2010); *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80-81 (Ill. 2003). Even if we accept Larsen's version of the events, the officers' actions to secure Larsen's arrest based on probable cause were not extreme or outrageous.

AFFIRMED.