In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 22-2863

ELIZABETH ALICEA, *et al.*,

*Plaintiffs-Appellants*,

*v.*

COUNTY OF COOK and THOMAS J. DART,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-05381 — **Nancy L. Maldonado**, *Judge*.

———————————

ARGUED NOVEMBER 1, 2023 — DECIDED DECEMBER 18, 2023

———————————

Before SYKES, *Chief Judge*, and ST. EVE and LEE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Pretrial detainees challenge Cook County's use of cameras to record holding cell toilets in courthouses throughout the county. They allege cameras that record semi-private toilet areas in some holding cells infringe upon their Fourth Amendment privacy interests and those of similarly situated detainees. The district court disagreed, granting summary judgment in favor of Defendants after

denying Plaintiffs' motion for class certification. Plaintiffs now appeal, and we affirm.

## I. Background

Elizabeth Alicea, Katina Ramos, Michelle Urrutia, and Jack Artinian challenge the constitutionality of cameras placed in holding cells in Cook County courthouses and claim intrusion upon seclusion under Illinois law. They also appeal several of the district court's discovery rulings.

### A. Factual Background

Cook County and Cook County Sheriff Thomas Dart operate holding cells in courthouses throughout the county for detainees awaiting court appearances. Each holding cell contains a toilet partially separated from the rest of the cell with a partition. Mounted cameras record holding cells; footage is maintained for thirty days although it may be retained beyond that time for legal purposes. Some of those cameras capture the toilet area, though most do not.[1]

Officers monitor camera feeds infrequently, and Cook County policy prohibits officers reviewing footage from "view[ing] an individual's private underclothing, buttocks, genitalia, or female breasts while that individual is showering, performing bodily functions or changing clothes, unless he/she otherwise qualifies for a strip search."

Alicea, Ramos, Urrutia, and Artinian occupied holding cells in Cook County courthouses before and after court

---

[1] The parties dispute how many surveillance cameras capture holding cell toilets. Out of approximately 250 cameras county-wide, Defendants argue only 6 capture the toilet, while Plaintiffs assert the number is at least 28.

appearances. They each allege that they used the toilet in the holding cell in which they were detained, although only Alicea has identified the exact holding cell she occupied. No one alleges any officer viewed video footage of their toilet use.

**B. Procedural Background**

Plaintiffs sued Cook County and Sheriff Dart in August 2018, alleging that their use of cameras to monitor and record holding cell toilet areas violated the detainees' Fourth Amendment rights against unreasonable searches and intruded upon seclusion under Illinois state law. They also requested class certification for all similarly situated past and current detainees.

Judge Ronald A. Guzman ordered class-certification discovery, overseen by Magistrate Judge Maria Valdez, and set a deadline for close of that discovery on January 14, 2019, ultimately extended to March 15, 2019. During discovery, Plaintiffs complained that Defendants were unresponsive to discovery requests and filed two motions to compel in January and February of 2019, each of which Judge Valdez granted in part and denied in part. In April, Plaintiffs requested leave to take additional depositions, also moving to compel and for an award of attorneys' fees, but the district court denied each motion.

In October 2019, Judge Guzman granted Defendants' motion to determine the claims' merits prior to class certification. Defendants then moved for summary judgment on all

claims.[2] Judge John F. Kness, to whom the case was reassigned in February 2020, granted that motion.[3] He explained that because detainees have no reasonable expectation of privacy in jail or prison cells, routine and incidental viewing by authorized employees reviewing camera footage does not violate the Fourth Amendment. For that same reason, Plaintiffs had not established intrusion upon a private matter as necessary for a claim of intrusion upon seclusion under Illinois law.

Plaintiffs now appeal the district court's summary judgment ruling in favor of Defendants on both the Fourth Amendment and intrusion upon seclusion claims. They also appeal various discovery-related decisions by the district court.

## II. Analysis

### A. Standing

Defendants have not contested Plaintiffs' standing to sue. We must nevertheless reassure ourselves that we have authority to resolve a dispute; we review that authority de novo. *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022).

Federal courts are limited by Article III of the Constitution to certain "Cases" and "Controversies." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). This limitation requires, in part, that plaintiffs establish standing or "a personal stake

[2] Plaintiffs twice moved for class certification. The first time, the district court denied the motion on the basis that Plaintiffs defined the class too broadly. The second time, the district court struck the motion without prejudice to decide the merits before class certification.

[3] The case has since been reassigned to Judge Nancy L. Maldonado.

in the case." *Id.* (cleaned up). This is a three-part burden: "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691–92 (7th Cir. 2015).

To satisfy standing at summary judgment, plaintiffs must "set forth by affidavit or other evidence specific facts supporting their standing to sue." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (cleaned up).

The parties do not dispute that Cook County and its sheriff are responsible for and operate the cameras allegedly capturing private information; nor is there any dispute that this court can rectify that intrusion, if unconstitutional. Yet at this stage in the proceedings, Plaintiffs' allegations that they were placed in holding cells that *may* have been monitored by cameras that captured the toilet area are not enough. *See id.* (holding that summary judgment requires "specific facts," not just "mere allegations," to establish standing). Each named plaintiff must set forth particular facts assuring the court that she has suffered an actual injury.

Alicea has established facts necessary to satisfy standing at summary judgment. She affirmatively identified the cell she occupied from a still photo taken from the camera monitoring that cell. That camera captures the cell's toilet area, leaving little doubt that the camera captured Alicea when she used the holding cell toilet.

Unlike Alicea, Ramos, Artinian, and Urrutia have not es-
tablished facts necessary to demonstrate an actual and partic-
ularized injury. Although they claim they occupied Cook
County holding cells and that they used the toilet while in
those cells, none can identify *which* holding cell they occupied.
Nor did they testify that they in fact occupied a holding cell
with a toilet area recorded by a camera. We have no way of
knowing whether Ramos, Artinian, or Urrutia occupied one
of the fraction of courthouse holding cells in which the camera
captures the toilet area. Because these three plaintiffs have not
established an actual injury, they do not have standing.

At oral argument, Plaintiffs explained that they had been
unable to establish standing for purposes of summary judg-
ment because the district court permitted only class discovery
prior to granting Defendants' motion for summary judgment.
More discovery is necessary, they contend, and the district
court improperly denied their requests to that end. We are not
persuaded. Plaintiffs purporting to represent a class are obli-
gated to demonstrate that they have standing to seek relief on
behalf of the class. *See Keep Chi. Livable v. City of Chicago*, 913
F.3d 618, 621 (7th Cir. 2019).

Because Alicea has standing to sue, she alone can continue
as class representative in this putative class action. *See Kohen
v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)
(holding that "one named plaintiff with standing … is all that
is necessary").

### B. Reasonableness of the Search

The district court granted summary judgment in favor of
Defendants, finding that the detainees have no reasonable ex-
pectation of privacy when using the toilets in courthouse

holding cells. We review that decision de novo. *Henry v. Hulett*, 969 F.3d 769, 776 (7th Cir. 2020).

A search subject to the protections of the Fourth Amendment exists if two conditions are met: "[F]irst, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *United States v. Tuggle*, 4 F.4th 505, 513 (7th Cir. 2021) (quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)).

This case raises difficult questions about the extent to which detainees have a reasonable expectation of privacy in their bodies while in a holding cell. It also asks us to consider whether recordings of private acts, retained for a finite period of time, are equivalent to direct human observation, and whether a recording, without evidence of viewing by the human eye, can constitute a search.

Our caselaw does not squarely determine whether electronic surveillance and recording of private bodily functions in a jail or prison cell constitute a search. Although we had previously interpreted the Supreme Court's decision in *Hudson v. Palmer*, 468 U.S. 517 (1984), to categorically foreclose any Fourth Amendment right to privacy for prisoners, *Johnson v. Phelan*, 69 F.3d 144, 146, 150 (7th Cir. 1995), we later clarified that *Hudson* eliminated only an inmate's "privacy and possessory interests in personal effects," or the *contents* of a cell, *Henry*, 969 F.3d at 777 (quoting *Hudson*, 468 U.S. at 538 (O'Connor, J., concurring)). Strip searches, on the other hand, do trigger Fourth Amendment privacy interests. Consequently, we held that "the Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections," a holding that "pertains to pretrial

detainees and convicted prisoners alike." *Henry*, 969 F.3d at 779. We have rejected any rule "that the interior of one's body is as open to invasion as the interior of one's cell." *Id.* at 782 (quoting *Sparks v. Stutler*, 71 F.3d 259, 261 (7th Cir. 1995)).

Although detainees do not relinquish all bodily rights to privacy as soon as they are placed in jail cells, those privacy rights are substantially diminished. *See id.* at 784 ("[T]he fact that institutional concerns significantly diminish the privacy rights of persons in prison does not mean that the Fourth Amendment provides no protection at all."). It is the extent of those limitations on an inmate's right to bodily privacy that this appeal calls into question.

We leave those difficult questions for another day. Even if a Fourth Amendment search occurs, invasions of privacy may be "subject to reasonable intrusions that the realities of incarceration often demand," so long as those intrusions are limited in response to "ever-present institutional concerns over safety and security." *Id.* at 779, 783. Because we find that Cook County's use of cameras in courthouse holding cells is reasonable under the circumstances, we need not determine whether a search occurred in the first instance.

The reasonableness of a search depends on four factors: "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 779 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). One such reasonable, limited intrusion is guards "routinely and incidentally observing [inmates] in various states of undress in their … toilets." *Id.* at 783 (citing *Johnson*, 69 F.3d at 145).

*Scope and Manner*. Cook County limits the scope and manner of any intrusion upon privacy interests. It is uncontested that recording of holding cell toilet areas is incidental; only a few cameras even capture the toilet. The intrusion is further limited by not continually monitoring video feeds, storing recordings for only thirty days unless legally necessary beyond that time, restricting who can access stored footage, and further limiting incidental recordings by adopting a policy that prohibits officers from "view[ing] an individual's private underclothing, buttocks, genitalia, or female breasts while that individual is showering, performing bodily functions or changing clothes, unless he/she otherwise qualifies for a strip search." Due to these practices and policies, the scope and manner of the intrusion is quite limited, and "incidental observations of undressed inmates—particularly ones that are infrequent or at a distance—that are inherent to the continuous surveillance necessary in prisons are almost always reasonable." *Id.* at 783. The scope and manner of any intrusion incidental toilet recordings might constitute is limited and infrequent, and therefore reasonable in the context of a pre-trial holding cell.

*Justification.* The security risks inherent in this setting also justify the intrusion; courthouse cameras are necessary responses to those risks. Defendants offered testimony from courthouse superintendents listing security needs such as addressing emergencies, monitoring detainees with behavioral or mental health problems, ensuring detainee safety, and investigating allegations of employee misconduct. This list supports that the incidental recording of the toilet area in holding cells intended for multiple detainees is, in the judgment of jail administrators, "needed to preserve internal order and discipline and to maintain institutional security," a judgment that

we must afford great deference. *Id.* (quoting *Bell*, 441 U.S. at 547). Indeed, security risks do not stop at the bathroom door of a holding cell, particularly in semi-public holding cells where there is no bathroom door.

Alicea counters with testimony from a deputy sheriff that he could think of no security reasons for monitoring detainees using holding cell toilets. We owe deference to jail and prison administrators responsible for adoption and implementation of policies, *id.*, those "who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). But a deputy sheriff, as the district court pointed out, has no policy-making authority or responsibilities, so his testimony cannot outweigh that of courthouse superintendents or raise a genuine issue of material fact where, as here, we lack "substantial evidence in the record to indicate that the officials have exaggerated their response" to security concerns. *Henry*, 969 F.3d at 783 (quoting *Bell*, 441 U.S. at 548).

*Place.* The location in which monitoring occurs also indicates that this intrusion is reasonable. A visible camera mounted on the ceiling captures a non-private bathroom separated by a partition from the rest of a non-private holding cell. Multiple detainees might be placed in that holding cell at a time. Since detainees enjoy very little privacy in these cells, even from other occupants, camera monitoring is reasonable when subject to limitations on scope and manner and responsive to security concerns.

Under these policies and practices, any incidental viewing of a detainee's body while using the toilet in a holding cell

intended to hold multiple detainees is a reasonably limited intrusion. Consequently, we affirm the district court's order granting summary judgment in favor of Defendants.

## C. Intrusion Upon Seclusion

To survive summary judgment on a claim for intrusion upon seclusion, a plaintiff must identify specific evidence showing a genuine dispute of material fact for each element of that Illinois tort: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the appellant anguish and suffering." *Spiegel v. McClintic*, 916 F.3d 611, 619 (7th Cir. 2019) (quoting *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004)). We review the district court's decision here de novo. *Henry*, 969 F.3d at 776.

Illinois law does not presume injury; Alicea "must prove actual injury in the form of, for example, medical care, an inability to sleep or work, or a loss of reputation or integrity in the community." *Spiegel*, 916 F.3d at 619 (quoting *Schmidt v. Ameritech Ill.*, 768 N.E.2d 303, 316 (Ill. App. Ct. 2002)). Alicea asserts only general anguish and embarrassment from being recorded while using the holding cell toilet, allegations that fall far short of state law requirements. Because Alicea has not met her burden on the fourth element, anguish and suffering, her claim cannot survive summary judgment.

## D. Discovery-Related Motions

Finally, Alicea asks that we reverse several docket-management and discovery-related decisions, which we review for abuse of discretion. *Wanko v. Bd. of Trs.*, 927 F.3d 966, 969

(7th Cir. 2019). This standard is deferential because "[t]he district court is in the best position to decide the proper scope of discovery and to settle any discovery disputes." *Id.* (quoting *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 785 (7th Cir. 2013)).

### 1. Additional Discovery

First, Alicea argues that Judge Guzman abused his discretion by denying Plaintiffs' motion to compel, declining to grant leave to take additional depositions, and ruling against her at summary judgment before permitting full discovery. District courts have broad discretion to manage their dockets, including setting close-of-discovery dates, permitting extensions, and disposing of claims through summary judgment when appropriate. *See Stevens v. United States Dept. of State*, 20 F.4th 337, 341 (7th Cir. 2021). "The mere fact that discovery is incomplete is not enough to prevent summary judgment." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019); *cf. Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000) ("A district court's decision to consider a defendant's motion for summary judgment before allowing the plaintiff to depose certain witness[es] is a discovery matter which we review for abuse of discretion."). Nor is a district court obligated to permit additional discovery after the close-of-discovery deadline has passed, a deadline Judge Guzman extended multiple times in this case.

When a defendant files a motion for summary judgment, the plaintiff can request additional discovery under Federal Rule of Civil Procedure 56(d). *See Kallal v. CIBA Vision Corp., Inc.*, 779 F.3d 443, 446 (7th Cir. 2015). Rule 56(d) instructs a party seeking such discovery to "state the reasons why the party cannot adequately respond to" that motion without additional discovery. *MAO-MSO Recovery II, LLC v. State Farm*

*Mut. Auto. Ins. Co.*, 994 F.3d 869, 877 (7th Cir. 2021) (quoting *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006)). The party requesting additional discovery must submit an affidavit or declaration stating that "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see also MAO-MSO Recovery II, LLC*, 994 F.3d at 877; *Larsen v. Elk Grove Village*, 433 F. App'x 470, 472 (7th Cir. 2011). This explanation "requires more than a fond hope that more fishing might net some good evidence." *MAO-MSO Recovery II, LLC*, 994 F.3d at 877 (quoting *Smith*, 933 F.3d at 864). Mere speculation, for example, about unnamed witnesses that might have helpful information will not suffice. *Larsen*, 433 F. App'x at 472.

Although Plaintiffs did file a Rule 56(d) declaration with the district court, that declaration simply listed the discovery they hoped to conduct and the reasons they had not yet obtained it. The declaration does not explain how the lack of this discovery prevented Plaintiffs from responding to the summary judgment motion. Plaintiffs' broad assertions that the requested items were necessary to establish genuine issues of material fact do not satisfy Rule 56(d). Indeed, the declaration must not only explain why the party has not been able to obtain requested discovery but also the import of that discovery to "facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Because Plaintiffs have not provided the necessary specificity to meet their burden, the district court did not abuse its discretion by denying that request.

### 2. Attorneys' Fees

The district court also did not abuse its discretion by denying Alicea's motion for sanctions related to various discovery requests.

After the district court partially granted two of Alicea's motions to compel in February and March 2019, Alicea moved for attorneys' fees under Federal Rule of Civil Procedure 37(a)(5)(C) in the same April group of motions requesting additional discovery discussed above. Rule 37(a)(5)(C) provides that if a motion to compel is partially granted, the district court has discretion to, "after giving an opportunity to be heard, apportion the reasonable expenses for the motion." This rule is in contrast with 37(a)(5)(A) and (B), which *require* the award of appropriate attorneys' fees to the prevailing party. Alicea points out that the district court may have misunderstood the motion, because that court explained the denial of attorneys' fees by noting that it was denying all motions for additional discovery without acknowledging the motion for attorneys' fees concerned previous motions to compel.

Assuming this error to be true, we still find that the district court did not abuse its discretion. Even if it properly understood Plaintiffs' motion for attorneys' fees, it had discretion under 37(a)(5)(C) to deny the motion. In February and March, the district court only partially granted Alicea's motions to compel. After reviewing the record and district court rulings, we conclude that the court would have been well within its discretion to find that no attorneys' fees were reasonable under those circumstances. Consequently, any error was harmless.

## III. Conclusion

For these reasons, we affirm the district court's decision to grant summary judgment on all claims in favor of Defendants and deny Plaintiffs' motions related to discovery and attorneys' fees.

\*       \*       \*

The judgment of the district court is

AFFIRMED.