In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1070

MARSHALL SPIEGEL,

*Plaintiff-Appellant*,

*v.*

CORRINE MCCLINTIC and VILLAGE OF WILMETTE,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 9357 — **Sara L. Ellis**, *Judge*.

ARGUED DECEMBER 4, 2018 — DECIDED FEBRUARY 14, 2019

Before BAUER, KANNE, and BRENNAN, *Circuit Judges*.

KANNE, *Circuit Judge*. Matthew Spiegel believes that Corrine McClintic (and her husband William) have been violating condominium association rules since the McClintics purchased a unit in the building where he lives. To document their perceived violations, Spiegel took to photographing and filming the McClintics. In response to his less-than-subtle surveillance, Corrine McClintic began filing police reports. Spiegel was not arrested. But members of the Village of Wilmette

Police Department threatened him with arrest for disorderly conduct if he persists in photographing and videotaping the McClintics. Spiegel subsequently sued Corrine and the Village of Wilmette. In his second amended complaint—the dismissal of which Spiegel now appeals—he argues that Wilmette and McClintic conspired together to violate his constitutional rights. He further claims that Corrine intruded upon his seclusion, in violation of Illinois law, by photographing the interior of his condominium. Because Spiegel has not identified a constitutional violation or shown that he suffered damages from the alleged intrusion upon his seclusion, we affirm the dismissal.

## I. BACKGROUND

We take the well-pleaded allegations from Spiegel's second amended complaint as true.[1] Marshall Spiegel has lived in a condominium building in Wilmette, Illinois for 22 years. In 2015, Corinne and William McClintic bought a unit in the building. Despite condominium association rules which prohibit renting out units, the McClintics did so. They do not live in the building but use the building pool almost daily.

### 1. *Spiegel's Surveillance of Corrine McClintic*

Spiegel explains that, "to protect himself from false allegations," he began "documenting violations of the Association's

---

[1] For reasons explained below, Spiegel's motion for leave to file a third amended complaint was untimely. Accordingly, the few additional factual allegations Spiegel advances in that proposed complaint are not relevant to our analysis. Spiegel also makes several new factual assertions in his brief. Those facts would not change our analysis even if Spiegel had included them in his complaint.

rules by the McClintics." Specifically, he began photo-graphing and videotaping the couple. His second amended complaint is interspersed with pictures of the McClintics around the building. In most of the photos, the person pictured is looking directly at the camera.

The tensions between Spiegel and the McClintics quickly escalated. Corrine filed numerous police reports between June and October 2016. In one report—in June 2016—Corrine told officers that Spiegel jumped in front of her car and photographed her. In response, Wilmette police officers warned Spiegel against causing further problems. Spiegel told the officers that the report contained false allegations and argued that his conduct did not violate the disorderly conduct ordinance, but the officers "insisted that Spiegel had broken the law." On September 20, 2016, Spiegel videotaped Corrine, William, and another unit owner talking near the pool. Corrine reported to the Wilmette police that Spiegel was videotaping her in her bathing suit (an allegation he denies) and asked that they arrest him for disorderly conduct. On October 7, 2016, Spiegel documented Corrine McClintic attempting to evade a process server in front of the condominium building. Corrine McClintic informed Spiegel that the Wilmette police had promised to arrest him if he videotaped her again. She reported the incident.

Spiegel also videotaped Corrine McClintic at a later, unspecified Association meeting. Once again, she threatened Spiegel with arrest if he continued videotaping her. The second amended complaint does not clarify whether McClintic filed a police report.

### 2. *Corrine McClintic's Surveillance of Spiegel*

Spiegel alleges that Corrine McClintic, not he, is the one engaged in illegal surveillance. He contends that, between May 29 and June 4, 2016, she attempted to peer into Spiegel's unit on three occasions. He suspects she took pictures. Spiegel also caught Corrine McClintic "spying" on him by the pool and near the elevator. Spiegel does not specifically allege that he reported these incidents to the Wilmette police.

He does assert, however, that "Wilmette police have refused to act on Spiegel's claims against residents and others." The only specific example he gives in the second amended complaint involves an altercation at a "recent Association meeting" where "a resident's son-in-law battered Spiegel in front of roughly ten people until security guards pulled him off." Spiegel reported the incident to Wilmette police, but they declined to charge the man.

### 3. *Procedural History*

Spiegel filed suit against Corrine McClintic, alleging state law defamation and requesting a declaration that the First Amendment protected his public videotaping. Two days later, he filed a first amended complaint which added the Village of Wilmette as a defendant. The district court dismissed the first amended complaint for lack of subject matter jurisdiction but granted Spiegel leave to file a second amended complaint. In that complaint, Spiegel sought relief against Corrine McClintic and the Village of Wilmette under 42 U.S.C. § 1983 and against Corrine McClintic for intrusion upon seclusion under Illinois law. On November 29, 2016, Spiegel filed a motion for a temporary restraining order or preliminary injunction, and the defendants moved to dismiss.

On September 27, 2017, the district court dismissed Spiegel's claims against McClintic and denied Spiegel's motion for a preliminary injunction. On November 7, 2017, after supplemental briefing, the district court dismissed Spiegel's claim against Wilmette and entered final judgment.

Approximately one month later, Spiegel filed a combined motion to vacate the judgment and to file a third amended complaint. In a text-only order, the district court denied the motion to vacate because it presented arguments already considered and rejected and denied the motion to amend for the same reasons articulated in the November 7, 2017, order. Spiegel's proposed third amended complaint was largely identical to his second amended complaint, but it offered several additional factual allegations and named three Wilmette officers as defendants. This appeal followed.

## II. ANALYSIS

Spiegel frames his suit as one meant to vindicate his constitutional right to photograph and videotape in public. He essentially argues that the defendants violated his First Amendment rights by conspiring to prosecute him for lawful conduct. We need not reach the question of whether Spiegel has, in fact, identified a constitutional violation because his claims suffer from threshold deficiencies.

We review a district court's dismissal under Rule 12(b)(6) *de novo*. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010). Like the district court, we construe the second amended complaint in a light most favorable to Spiegel. *Id.*

*1. Spiegel Has Not Stated a § 1983 Claim Against McClintic*

The district court properly dismissed Spiegel's § 1983 claim against Corrine McClintic because she is a private citizen. "To state a claim for relief in an action brought under § 1983, respondents must establish … that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). The under-color-of-state-law element means that § 1983 does not permit suits based on private conduct, "no matter how discriminatory or wrongful." *Id.* at 50 (citation omitted). But a private citizen can act under color of law if there is "evidence of a *concerted effort* between a state actor and that individual." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). We call this the "conspiracy theory" of § 1983 liability.

Spiegel argues that he can hold Corrine McClintic liable under § 1983 merely by alleging aid to or encouragement of state action by McClintic, not an actual conspiracy. That's inconsistent with the clear holding in *Fries*. "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Id.* (internal citations omitted). "[M]ere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Id.* at 458.

Spiegel also argues that an "agreement among all the conspirators is not a necessary element of a civil conspiracy," quoting *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir. 1983). But

he misquotes *Lenard*: the court actually stated that "[a]n *express* agreement" is not required. *Id.* (emphasis added).

With the proper standard established, we attempt to find a conspiracy within Spiegel's allegations. Spiegel quotes language in *Gramenos v. Jewel Cos.*, asserting that "[i]f the police promise to arrest anyone the shopkeeper designates, then the shopkeeper is exercising the state's function and is treated as if he were the state." 797 F.2d 432, 435 (7th Cir. 1986). But Spiegel doesn't allege that Wilmette police agreed to arrest Spiegel if directed to do so by McClintic. The officers clearly retained full discretion, evidenced by their decision to *not* arrest Spiegel.

We have repeatedly held that "the mere act of furnishing information to law enforcement officers" does not constitute joint activity in an unconstitutional arrest. *Butler v. Goldblatt Bros.*, 589 F.2d 323, 327 (7th Cir. 1978); *see also Kelley v. Myler*, 149 F.3d 641, 649 (7th Cir. 1998) ("Bell called the police when Kelley refused to leave the property after being asked to do so and then described the situation to the officers; he had no further communication with the officers. Such evidence does not support her charge that a conspiracy existed to arrest her in violation of her civil rights."); *Gramenos*, 797 F.2d at 435 (confirming that "one who accuses someone else of a crime is [not] exercising the powers of the state"). In *Brokaw v. Mercer Cty.*, we distinguished *Gramenos* and *Butler* because "they did not involve an alleged agreement between the police and the private citizens; rather, the private individuals acted independently from the government in making the police reports." 235 F.3d 1000, 1016 (7th Cir. 2000). The difference in *Brokaw* was that two private citizens and a deputy sheriff agreed to work together to remove a child from a home by

filing false allegations of child neglect. Thus, the state actor intentionally set in motion the seizure of the child, knowing that the removal was premised on false allegations.

So the mere act of filing false police reports is not actionable under § 1983. Spiegel never alleges that the officers were aware that the reports were false, much less that they had previously agreed with McClintic to investigate such false reports. In fact, it's unclear whether Corrine McClintic's reports contained falsehoods. He summarily alleges that the police reports involved false allegations, but never identifies them. Rather, Spiegel emphasizes that the officers refused to listen to his explanations for why his conduct was lawful. That's not enough to establish a conspiracy.

Because Spiegel has not plausibly alleged a conspiracy between McClintic and Wilmette to violate his constitutional rights, he failed to state a § 1983 claim against McClintic.

### 2.  *Spiegel Has Not Stated a* Monell *Claim Against Wilmette*

The district court properly dismissed Spiegel's claim against Wilmette because "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, a municipality can be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.

We interpret that language as creating three bases for municipal liability: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a cus-

tom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (citation omitted).

Spiegel argues that Wilmette's disorderly conduct ordinance constitutes the express policy of the City. The ordinance does not expressly criminalize public videography or photography. Wilmette, IL., Code ch. 12-4.1 (2017) (making it "unlawful for any person to knowingly do any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace in the village"). And, given the requirement that the person act in an "unreasonable manner," the ordinance does not raise facial constitutional concerns. *See Gower v. Vercler*, 377 F.3d 661, 670 (7th Cir. 2004) (explaining that the materially identical Illinois disorderly conduct statute does not run afoul of the First Amendment); *see also Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 602 (7th Cir. 2012) ("[W]hen 'speech' and 'nonspeech' elements are combined, and the 'nonspeech' element (e.g., prostitution) triggers the legal sanction, the incidental effect on speech rights will not normally raise First Amendment concerns."). Certainly, a person can photograph and videotape in a sufficiently disruptive way that it would be not unconstitutional to arrest the individual for disorderly conduct.

Spiegel's claim is thus about the enforcement of the statute, not its facial constitutionality. "[A] written policy that is facially constitutional, but fails to give detailed guidance that might have averted a constitutional violation by an employee, does not itself give rise to municipal liability." *Szabla v. City of Brooklyn Park.*, 486 F.3d 385, 392 (8th Cir. 2007) (en banc). Spiegel does not allege that Wilmette anticipated or intended that

the ordinance would be enforced to chill lawful, expressive conduct like photography. *See Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1280 (10th Cir. 2009) (explaining that enforcement of an ordinance can give rise to *Monell* liability if the injury "was caused by a straightforward enforcement of the ordinances, and not by any additional discretionary actions by the officers").

We do not think Spiegel has plausibly alleged an express policy by Wilmette to enforce the disorderly conduct ordinance unconstitutionally. He merely alleges that officers received reports of a disturbance, responded to the reports, and advised an apparent provocateur to stop his surveillance. That's not enough. *See Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791 (7th Cir. 1991) (rejecting the argument that a municipality was liable because it "ha[d] a 'policy' of allowing or instructing its police officers to enforce the challenged statutes").

As for the other bases for *Monell* liability, Spiegel wisely declines to argue that they exist. Two visits by officers do not constitute a widespread policy or practice. And the complaint makes no mention of any Wilmette officials who might have policymaking authority.

Spiegel also argues that Wilmette can be held liable because the Village "ratified" its officers' actions. For a municipality to be liable on a ratification theory, the municipality "must approve both the employee's conduct and the basis for that conduct, i.e., the employee's motivation." *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009). Spiegel relies upon briefing in which Wilmette argued that the threats to arrest Spiegel did not violate the constitution. But contending that

no constitutional violation occurred is far different from asserting that the actions were appropriate even assuming the officers intended to chill free speech. Spiegel did not state a *Monell* claim against Wilmette.

### 3. *Spiegel Has Not Stated a Claim for Intrusion Upon Seclusion*

Under Illinois law, a plaintiff may sue for an intrusion upon seclusion. *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 34. The cause of action's elements are: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004). The district court dismissed Spiegel's claim after finding that he did not allege damages from the purported intrusions.

Spiegel argues, simply, that damages for intrusion upon seclusion are presumed. "Under Illinois law, a plaintiff must prove actual injury in the form of, for example, medical care, an inability to sleep or work, or a loss of reputation and integrity in the community in order to recover damages for torts such as intrusion upon seclusion. *Injury is not presumed.*" *Schmidt v. Ameritech Ill.*, 768 N.E.2d 303, 316 (Ill. App. Ct. 2002) (citation omitted) (emphasis added); *see also McGreal v. AT & T Corp.*, 892 F. Supp. 2d 996, 1015 (N.D. Ill. 2012) (collecting cases in which courts dismissed claims for intrusion upon seclusion for failure to allege damages specifically). Spiegel did not allege facts to support a required element of his state law privacy claim.

### 4. *Spiegel's Remaining Motions*

Spiegel also appeals the district court's denial of his motion for a preliminary injunction, motion to vacate the judgment, and motion for leave to file a third amended complaint. Because the district court correctly found that Spiegel had not stated a claim against the defendants, the court properly denied the motions for injunctive relief and to vacate the judgment.

The proposed third amended complaint included claims against three officers. The district court denied the motion to amend on futility grounds but did not address the addition of individual officers as defendants. Despite that oversight, the court properly denied the motion to amend. "When there has been an entry of final judgment, a complaining party may amend a complaint pursuant to Rule 15(a) only after that party has successfully altered or amended the judgment pursuant to Rule 59(e) or the judgment has been vacated pursuant to Rule 60(b)." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 790 (7th Cir. 2004). Because the court entered final judgment and denied Spiegel's motion to vacate the judgment, the court had no jurisdiction to consider the motion to amend. *Id.*

### III. CONCLUSION

The district court correctly found that Spiegel did not state constitutional or state law claims in his second amended complaint. McClintic did not conspire with Wilmette, and Spiegel has not identified an express policy by Wilmette that caused a constitutional deprivation. As to his state law privacy claim, Illinois law requires that damages be specifically alleged.

AFFIRMED.