In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 18-3737

SHAKA FREEMAN,

*Plaintiff-Appellant,*

*v.*

METROPOLITAN WATER RECLAMATION
DISTRICT OF GREATER CHICAGO,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 4409 — **Harry D. Leinenweber**, *Judge.*

———————————

SUBMITTED MAY 30, 2019[1] — DECIDED JUNE 14, 2019[2]

———————————

[1] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

[2] This opinion was originally issued as a nonprecedential order on June 3, 2019. The court has decided to re-issue it as a precedential opinion.

Before WOOD, *Chief Judge*, and EASTERBROOK and ROVNER, *Circuit Judges*.

PER CURIAM, Shaka Freeman, an African-American man who suffers from alcoholism, sued the Water Reclamation District of Greater Chicago, his former employer, for firing him because of his race and disability. The district court dismissed his complaint for failure to state a claim. See FED. R. CIV. P. 12(b)(6). We conclude, however, that Freeman has pleaded enough to state his discrimination claims, and so we vacate the judgment and remand for further proceedings with respect to those issues. We affirm with respect to Freeman's contention that the District fired him pursuant to a policy that is unlawful under *Monell v. Department of Social Services.*, 436 U.S. 658, 694–95 (1978).

For purposes of this appeal, we assume the truth of the allegations in Freeman's complaint and its attachments. See *Carmody v. Bd. of Trs. of the Univ. of Ill.*, 747 F.3d 470, 471 (7th Cir. 2014). Freeman began working for the District in May 2015 as an operator of a treatment plant. The District is a municipal corporation. See 70 ILCS 2605/1. Freeman's job involved the collection and transportation of temperature-sensitive water samples across the mile-long plant. Although operators typically transport these samples in District-owned vehicles, the job description does not require a driver's license. In his first year, Freeman, like all new hires, was a probationary worker, employed at will. *Id.* at 2605/4.11. Once he completed his first year, the District would be able to fire him only for cause.

About three months after Freeman was hired, he was arrested for driving under the influence of alcohol and his license was suspended for six months. Freeman began seeing a

substance-abuse counselor for his alcohol problem. As required by his job contract, he also told the District about the license suspension and his counseling. To ensure that concerns about his alcohol problem or license suspension did not interfere with his job, he did three things: (1) he bought a bike and a cooler to transport samples around the plant, (2) he asked if he could use a John Deere go-cart, which does not require a driver's license on private property, and (3) he applied for an occupational driving permit from the state that would permit him to drive a company vehicle while working. (The state authorized his permit conditional on the District's approval, but the District refused to grant his request.) The District fired Freeman while he was on probation, asserting "unsatisfactory performance." Freeman alleges that this explanation is pretextual; the District's real reason for firing him he said, was because of his race and because it regarded him as an alcoholic.

Freeman sued the District for employment discrimination. Its path in the district court was a rocky one, and the case presented some managerial challenges for the district court. At the outset of the suit, the court recruited an attorney to represent Freeman. That relationship broke down and the attorney was excused; three additional attorneys followed. Each one moved to withdraw because of disagreements with Freeman about litigation strategy. Second, while proceeding *pro se*, Freeman filed three sprawling amended complaints, each over 70 pages. On the District's motions, the judge dismissed two of these filings for failure to comply with the requirement under Federal Rule of Civil Procedure 8(a) calling for a "short and plain statement of the claim." Freeman withdrew the third iteration.

His operative complaint—the fourth amended version—raises claims of race and disability discrimination and of retaliation, in violation of 42 U.S.C. §§ 1981, 1983, Title VII of the Civil Rights Act of 1964, *id.* § 2000e-2, and the Americans with Disabilities Act, *id.* at § 12112. He alleges that the District fired him "due to his race" (African-American) and "disability" (alcoholism). He next asserts that the District failed reasonably to accommodate his alcoholism by refusing to let him travel around the grounds of the plant without using a car. He also accuses the District of retaliating against him by firing him after he sought reasonable accommodations. Finally, he alleges that the District fired him under an unconstitutional policy.

The district court dismissed Freeman's complaint with prejudice for failure to state a claim. Its opinion began with Freeman's assertion that the District fired him because of his alcoholism. The court reasoned that Freeman pleaded neither that his alcoholism caused "substantial limitations" to major life activities nor that it caused his firing. Next, the court said, Freeman's retaliation and reasonable-accommodations claims failed because he had requested accommodations only for his license suspension, not his alcoholism. Turning to Freeman's race-discrimination claims under § 1983 and Title VII, the court ruled that Freeman "fail[ed] to plead the final element"—that he was treated less favorably than at least one colleague who was not African-American. Freeman had no claim under § 1981 because, the court explained, that statute generally does not allow a private right of action against public actors. Finally, the court concluded that Freeman had not stated a "policy" claim under *Monell* because he had not identified the policy or practice that he challenged.

On appeal Freeman (still acting *pro se*) contends that his complaint sufficiently states each of his claims. He argues that the district court erroneously "judg[ed] the truth of [his] factual allegations," including his allegation that the District's decision to fire him for "unsatisfactory performance" was pretextual.

We conclude that the district court erred by demanding too much specificity in Freeman's complaint. A plaintiff alleging race discrimination need not allege each evidentiary element of a legal theory to survive a motion to dismiss. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–14 (2002); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Rather, to proceed against the District under § 1983 or Title VII, Freeman needed only to allege—as he did here—that the District fired him because of his race. *Tamayo*, 526 F.3d at 1084; see also *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("'I was turned down for a job because of my race' is all a complaint has to say."). His failure to plead the evidentiary element about comparable coworkers, therefore, is not fatal.

Similarly, Freeman has stated a claim for disability and retaliation claims under the ADA. The general rule in federal court calls only for notice pleading, see *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but some theories of recovery require more detail than others in order to give the required notice. That is why we noted in *Tate v. SCR Medical Transportation*, 809 F.3d 343, 345 (7th Cir. 2015), that a plaintiff advancing a claim under the ADA must allege that he is disabled but, with or without reasonable accommodation, can still do the job. Normally he also must allege what exactly makes him disabled.

The district court here faulted Freeman for not alleging that his alcoholism substantially limits a major life activity.

See *Tate*, 809 F.3d at 345–46. But we read Freeman's complaint as alleging that the District *regarded* him as an alcoholic, see 42 U.S.C. § 12102(1)(C), because of his suspended license for driving under the influence of alcohol, and then it concluded from his suspension that his alcoholism impaired his ability to work at any job that involves safely moving items across a facility. Because that activity includes a broad class of work, a jury could conclude that it is a major life activity. See 29 C.F.R. § 1630.2(i)(1); *Miller v. Ill. Dept. of Transp.*, 643 F.3d 190, 195–97 (7th Cir. 2011). Freeman also alleged that he could fulfill his duties with a reasonable accommodation (bike, John Deere cart, or occupational permit), but that the District fired him anyway "due to" his alcoholism and his request to accommodate his condition. These allegations state claims for disability discrimination and retaliation. See 42 U.S.C. § 12102(1)(C); *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172–73 (7th Cir. 2013).

We emphasize that we are holding only that these allegations suffice to initiate Freeman's litigation. Later proceedings will determine whether he can prove them. For example, as the district court anticipated, Freeman will need to prove that his disability and his request for an accommodation, as opposed to the suspension of his driver's license (which he alleges he is not required to have for the job), motivated his discharge. We have recognized that alcoholism does not "cause" a license suspension for driving under the influence of alcohol, and so a sincere reliance on an employee's license suspension may justify an adverse employment action. *Despears v. Milwaukee Cty.*, 63 F.3d 635, 636–37 (7th Cir. 1995). But for now his allegations say enough.

That brings us to Freeman's contention that his allegation that a District "policy" caused his discharge should also have passed muster. To succeed on this type of claim under § 1983, he had to allege that a District policy, custom, or act by a final decisionmaker caused him to suffer a constitutional injury. *Monell*, 436 U.S. at 694–95; *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). (The same is true for his discrimination claim under § 1981; that law does not create a private right of action against public bodies unless the plaintiff has raised *Monell* allegations. See *Campbell v. Forest Preserve Dist. of Cook Cty.*, 752 F.3d 665, 667, 669 (7th Cir. 2014).) Freeman alleges that the District disproportionately fires probationary employees who are African-American. But Freeman does not allege whether the policy is to *treat* African-Americans disparately or that the District's probation powers have a disparate *impact* on them. The legal consequences are different. See *Lewis v. City of Chicago*, 560 U.S. 205, 214–15 (2010) (explaining that disparate-treatment claims require showing of intent, but disparate-impact claims do not). Because the district court recruited four attorneys to assist Freeman with pleading this claim adequately, and he had four opportunities to amend his complaint to do so and yet never did, we see no abuse of discretion in the dismissal of this claim without additional leave to amend. See FED. R. CIV. P. 15(a)(2); *Lee v. Ne. Ill. Reg'l Commuter R.R.*, 912 F.3d 1049, 1052–53 (7th Cir. 2019).

This leaves one final matter. Mindful of the case-management difficulties to which we alluded earlier, we have considered whether we should affirm the district court's dismissal on another ground: Freeman's arguable failure, even in his fourth and operative complaint, to comply with Rule 8(a)'s requirement of brevity and clarity. See *Bennett*, 153 F.3d at 518. But because Freeman's complaint—though

unwieldy—adequately states his claims, we and the district court may ignore the excess in his complaint. *Id*.

We thus VACATE the judgment and REMAND for further proceedings with respect to Freeman's race and disability discrimination claims. We AFFIRM with respect to his *Monell* claim.