**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 26, 2020[*]
Decided March 27, 2020

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-1852

| | |
|---|---|
| BASSAM ANNOUS, <br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 18-cv-2094 |
| HANS BLASCHEK, <br> *Defendant-Appellee.* | Colin S. Bruce, <br> *Judge.* |

## O R D E R

While he was a graduate student at the University of Illinois at Urbana-Champaign, Bassam Annous discovered a process, later patented by the University, that isolates a strain of bacteria. When Hans Blaschek later received $5 million for selling a business that relied on a license from the University for this patent, Annous

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

sued Blaschek for some of that money. But the district court correctly ruled that no contract entitled Annous to these proceeds, and any other legal theory was untimely, so we affirm.

When Annous was a graduate student, Blaschek was his advisor, and they conducted research for the University. Annous learned how to isolate a mutant strain of bacteria called *Clostridium biejerinckii*. The strain, BA101, was valuable because it produced enhanced levels of butanol (an alcohol) and acetone (a flammable organic solvent). It was patented as U.S. Patent 6,358,717 ("the '717 patent"). Annous and Blaschek were listed as inventors, but all patent rights were issued to the sole assignee—The Board of Trustees at the University of Illinois.

Annous, Blaschek, and two other researchers made other discoveries that, along with the '717 patent, led to an agreement with the University. These four uncovered more strains of mutant bacteria and invented technology that could produce the bacteria. They signed an agreement with the University under which a fraction of the proceeds that the University receives from licensing this technology "will be shared" by the University with each of the "creator(s)," including Annous.

The '717 patent generated licensing revenues for the University that it shared with Annous. The first set of revenues came from a start-up venture that Blaschek formed based on BA101. Although the original BA101 culture had become contaminated, Annous told Blaschek how to get backup cultures, which Blaschek then used for his business. Afterwards, the University licensed the '717 patent to Blaschek's venture. Later, Eastman Chemical Company bought that venture from Blaschek for about $5 million, and the University then licensed the patent to Eastman. On February 13, 2013, Annous received a letter from the University telling him about the first license of the '717 patent to Blaschek's venture, the sale of Blaschek's venture to Eastman, and the second license of the '717 patent to Eastman. Annous received about $1,000 from his share of the first license and $10,000 from the second. He did not receive a percentage of the proceeds of the sale of Blaschek's venture, which Annous alleges occurred only because he told Blaschek about the uncontaminated, backup cultures.

More than five years after receiving his letter from the University about the sale, Annous filed this suit in March 2018 to obtain more money from Blaschek. Invoking diversity jurisdiction, *see* 28 U.S.C. § 1332, he sued Blaschek (and the University and Eastman, both later dismissed voluntarily), alleging that Blaschek had not fairly compensated him for his work on BA101. He raised four legal theories: (1) breach of

contract (based on the agreement with the University, which he attached to his complaint); (2) quantum meruit; (3) conversion; and (4) fraud.

Blaschek filed a motion to dismiss, which the district court granted. On the claims for breach of contract and quantum meruit, the court relied on the licensing agreement that Annous attached to his complaint. *See* FED. R. CIV. P. 10(c); *see also ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 745–46 (7th Cir. 2017). Based on that contract, which the court ruled defined the parties' relationship, Blaschek had no duty to pay Annous a percentage of the proceeds from the sale of his venture, so both claims failed. Next, the court dismissed Annous's conversion claim, because Annous had not alleged a protected interest in the underlying technology. The court also dismissed the fraud count, reasoning that Annous failed to allege that Blaschek had lied or violated a duty to speak. In the alternative, the court also ruled that these last three claims were barred by the Illinois five-year statute of limitations.

On appeal, Annous challenges most of these dismissals and seeks a remand so that he can amend his complaint to add more legal theories. (He has abandoned his conversion claim, so we leave that issue alone.) We review de novo a dismissal for failure to state a claim. *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020).

We first consider the dismissal of Annous's breach of contract claim. The only contract that he relies upon is the revenue-sharing agreement that, in his words, is a "valid and enforceable contract between Plaintiff, on the one hand, and the University of Illinois (and its Board of Trustees), on the other." By virtue of its terms, as Annous himself describes them, this contract dictates the rights and obligations between him and the University to share the latter's licensing revenue, not between him and Blaschek to share anything. It required the University to give to Annous a portion of the proceeds that it received from the licensing the '717 patent and related technology, and the University did so. The money that Blaschek received from the sale of his venture, or from other sources, is not governed by this agreement. *See Urban Sites of Chi., LLC v. Crown Castle USA*, 979 N.E.2d 480, 491 (Ill. App. Ct. 2012) (party bound by clear language of written agreement which contained entire agreement between parties).

Annous offers two responses, but neither persuades us. First, he argues that he was an intended third-party beneficiary of the revenue-sharing agreement, and therefore deserves more money from it, because he was named a co-creator in it. But Annous was a *party* to this agreement, and a third-party beneficiary is a person who is *not* named a party to the contract. *See Estate of Willis v. Kiferbaum Const. Corp.*,

830 N.E.2d 636, 642 (Ill. 2005); *Carlson v. Rehab. Inst. of Chi.*, 50 N.E.3d 1250, 1256 (Ill. App. 2016). Second, Annous suggests that we should remand the case and allow him to amend his complaint to plead claims for promissory or equitable estoppel. But Annous had already received two opportunities to amend his complaint, and he took advantage of them. The district court is not required to offer him another opportunity to add claims that he could have presented earlier. *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 966 (7th Cir. 2019). Nor are we required to consider them: By saving some legal theories for appeal and not presenting them first to the district court, Annous has forfeited them. *See Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 783 (7th Cir. 2015).

Finally, Annous contends that he adequately pleaded claims for quantum meruit and fraud. But these claims are barred by the statute of limitations. *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (appropriate to consider a statute of limitations defense where "the relevant dates are set forth unambiguously in the complaint"). These claims are subject to the Illinois five-year statute of limitations. 735 ILCS 5/13-205. Under Illinois law, these claims accrued as soon as the plaintiff should have discovered his injury. *Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 901 (Ill. 1995). As the district court correctly noted, Annous knew of his injuries by February 2013, at the latest. That is when, according to his complaint and exhibits, he received a letter from the University informing him that it had licensed the '717 patent to Blaschek's venture, that Eastman paid Blaschek to buy the venture, and that Eastman received a license for the patent. When he sued in March 2018, more than five years later, the limitations period had expired.

AFFIRMED