In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2527

SARAH THOMAS, individually and as legal guardian of C.S., a minor child,

*Plaintiff-Appellant,*

*v.*

NEENAH JOINT SCHOOL DISTRICT,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:21-cv-00366 — **William C. Griesbach**, *Judge.*

ARGUED FEBRUARY 22, 2023 — DECIDED JULY 20, 2023

Before HAMILTON, KIRSCH, and PRYOR, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Sarah Thomas brought this suit on behalf of herself and her child, C.S., alleging that several Neenah Joint School District staff members violated C.S.'s Fourth Amendment rights when disciplining her. Rather than sue the individual staff members involved in C.S.'s discipline, Thomas pursued only a *Monell* claim against the District and asserted that it had a de facto practice of using excessive force

or threats of force against students with behavioral disabilities like C.S. The district court dismissed the suit because Thomas failed to plausibly allege a widespread custom or practice of violating disabled students' Fourth Amendment rights. We agree and affirm.

I

In reviewing the dismissal of Thomas's complaint, we accept all well-pleaded facts as true and draw all reasonable inferences in her favor. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). C.S. attended sixth grade at a middle school within the Neenah Joint School District during the 2019–2020 school year. C.S. has multiple developmental and cognitive disabilities that affect her capabilities at school, including autism spectrum disorder, attention deficit hyperactivity disorder, and obsessive-compulsive disorder. She had an Individualized Education Plan—a program aimed at supporting the education of a child with disabilities—and was often taught and supervised by special education teacher Jason Fridley.

On February 13, 2020, C.S. attempted to use the elevator in a school hallway. Fridley told C.S. to stop, and when C.S. did not comply, he pushed her into the wall and held her there for several minutes, causing physical pain and mental distress. Andrew Braunel, the school's acting administrator, stepped in and assisted Fridley as C.S. continued to resist. Thirteen minutes later, school resource officer Rob Ross arrived, grabbed C.S. by the arm, forced her onto the floor, and pinned her face down while handcuffing her hands behind her back. Unable to restrain 13-year-old C.S. on his own, Ross held her in the prone position on the floor for nine minutes as he waited for two more police officers to arrive. When Ross

asked Fridley what had happened, Fridley responded that C.S. "wanted to take the elevator today." Ross asked, "Okay, that's all?" to which Fridley replied, "Yep." Ross told Fridley and Braunel that C.S. had to be detained because she was being physically violent.

When the other officers arrived, they lifted C.S. into a wheelchair with her hands still bound behind her back. They wheeled her into the elevator and brought her down to the first floor of the school, where they again placed her in a prone position on the floor and bound her legs before seating her back in the wheelchair. The officers kept C.S. handcuffed and bound until her mother eventually arrived and took her home. The entire incident lasted 34 minutes. Thomas alleged that neither school staff nor the officers attempted to calm C.S. as she cried and struggled to understand why she was being restrained. She also alleged that Fridley, Braunel, and Ross spoke in whispers while coordinating their actions and communicated that they were "all on the same page" about using continued restraint on C.S.

The amended complaint also describes an incident that occurred less than two weeks later, in which C.S. may have scratched or grabbed another student and was required to eat her lunch in the school office as punishment. While there, C.S. allegedly became anxious and dysregulated, prompting staff including Fridley to respond "with similar aggressive force[.]" Once again, school staff called the police department to restrain C.S. The District also sought a juvenile delinquency prosecution of C.S. but charges were dropped when C.S. was found not competent to stand trial. The complaint also refers to an unspecified incident in March 2020 but provides no facts about what happened. Lastly, the complaint describes an

incident involving A.S. (Thomas's son and C.S.'s older brother) who had previously attended the same middle school. In April 2016, A.S. allegedly bit a fellow student who was bullying him, and the school's then-principal requested the Neenah police department bring charges against A.S. His prosecution was also dropped after a finding that he was incompetent to stand trial.

From these incidents, Thomas alleged that the District had a "practice or protocol of utilizing excessive punitive and retaliatory force or threats of force to punish students with behavioral disabilities." She asserted that this practice "appears to have been known and understood" by the school staff involved in these incidents. The District moved to dismiss Thomas's claim, arguing that she failed to allege a municipal policy or custom of violating students' Fourth Amendment rights as required to establish municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The district court agreed and dismissed Thomas's amended complaint.

## II

We review a dismissal for failure to state a claim under Rule 12(b)(6) de novo. *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Section 1983 provides a civil remedy against any "person" who violates a plaintiff's federal civil rights while acting under color of state law. 42 U.S.C. § 1983. In *Monell*, the Supreme Court held that municipalities—such as school districts—are "person[s]" who may be sued under § 1983. 436 U.S. at 690. Municipalities may be sued only for their own violations of federal law, however, and cannot be held vicariously liable for the constitutional torts of their employees. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citing *Monell*, 436 U.S. at 691–94).

For a *Monell* claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that: (1) she was deprived of a constitutional right; (2) the deprivation can be traced "to some municipal action (i.e., 'a policy or custom'), such that the challenged conduct is properly attributable to the municipality itself"; (3) "the policy or custom demonstrates municipal fault, i.e., deliberate indifference"; and (4) "the municipal action was the moving force behind the federal-rights violation." *Id.* (cleaned up); see also *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). All requirements "'must be scrupulously applied' to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 676 (7th Cir. 2022) (citation omitted).

The district court expressed skepticism that the staff members' conduct violated C.S.'s Fourth Amendment rights—*Monell*'s first requirement—but ultimately granted the District's motion to dismiss for Thomas's failure to adequately plead a policy or custom. We agree that Thomas's *Monell* claim unravels at its second step. Three types of municipal action support *Monell* liability: "(1) an express policy that causes a

constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel*, 916 F.3d at 617 (quotation marks omitted).

Thomas relies solely on the second type, arguing that the District had an uncodified common practice of violating the Fourth Amendment rights of students with disabilities. To succeed on that theory, she must allege facts permitting a reasonable inference "that the practice is widespread and that the specific violations complained of were not isolated incidents." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Allegations of "a few sporadic examples of an improper behavior" will not suffice. *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021) (concluding that a complaint offering three examples of one officer speeding did not plausibly suggest that a city had a widespread practice of allowing officers to speed).

Thomas failed to plausibly allege that the District had a widespread practice of using excessive force to punish students with behavioral disabilities. In support of her claim, she alleged facts about: (1) the acting school administrator's involvement in the February 13 incident; (2) comments exchanged between the school staff that day about being "on the same page"; (3) an incident on February 25 when C.S. had lunch in the school office; and (4) an incident involving C.S.'s brother from 2016.

These allegations do not "permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill*, 850 F.3d at 344. At the outset, the allegations about C.S.'s brother are not relevant to our analysis. The

incident involving A.S.—in which he allegedly bit another student and the District pursued a juvenile prosecution in response—occurred four years before any of the alleged incidents involving C.S. Thomas also never alleged that A.S. was subject to any sort of excessive force, the constitutional violation at the heart of Thomas's complaint. For both reasons, the allegations about A.S.'s treatment lend no support to Thomas's widespread practice theory.

Thomas's allegations about C.S.'s treatment, moreover, fail to demonstrate a widespread pattern or practice of Fourth Amendment violations. Thomas alleged that when Braunel did not question Fridley's actions before helping restrain C.S. on February 13, he indicated approval of Fridley's use of restraint. But Braunel's mere assistance during one event does not support a reasonable inference that the District had a de facto policy of using excessive force to punish students. And nothing about comments exchanged between Fridley, Braunel, and Ross—about being "on the same page"—tells us anything about the existence of a widespread practice of using excessive force. Additionally, the allegations about the lunchtime incident on February 25 and the unspecified incident in March 2020 do not plausibly suggest a widespread practice of excessive force. The details surrounding these instances are so scarce that we cannot infer that excessive force was used. For the February 25 event, Thomas alleged that when C.S. was sent to the school office after a physical altercation with another student, she became dysregulated and school staff including Fridley "responded with similar aggressive force" as the incident two weeks earlier. The complaint contains no facts regarding the amount or kind of force any staff member used in restraining C.S. Even less is known about the March incident. All Thomas alleged is that there

was "one further [incident] in March 2020." Absolutely nothing can be deduced from this allegation, such as what happened, who was involved, or whether *any* force was used at all.

At bottom, Thomas's allegations of two isolated incidents fail to plausibly allege that the District has a widespread practice of using excessive force to punish students with behavioral disabilities. Accordingly, she has failed to state a claim under *Monell*.

AFFIRMED