In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 17-1656 & 17-2846

KEEP CHICAGO LIVABLE, an Illinois not-for-profit corporation, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-10371 — **Sara L. Ellis**, *Judge.*

ARGUED OCTOBER 22, 2018 — DECIDED JANUARY 14, 2019

Before FLAUM, EASTERBROOK, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. An organization known as Keep Chicago Livable and six individuals challenge the constitutionality of Chicago's Shared Housing Ordinance. The City passed the Ordinance in 2016 to regulate home-sharing activities, including services offered by companies like Airbnb. The district court denied a request for a preliminary injunction on certain claims and later dismissed without prejudice the

remaining claims from an amended complaint. These two appeals then followed. We now vacate the district court's decisions, as we cannot say with any confidence that any named plaintiff—Keep Chicago Livable or any of the six individuals—has pleaded or otherwise established sufficient injury to confer the subject matter jurisdiction necessary to proceed to the merits of any claim.

We have before us an organization and individuals with strongly-held views about the constitutionality of the City's Ordinance, but Article III of the Constitution requires more: our authority is limited to deciding cases or controversies between adverse litigants, and without a clear indication that at least one named plaintiff has an actual or imminent injury, we have no authority to go further. So we remand to the district court to make a determination of standing and to proceed if and as appropriate from there.

## I

### A

Home-sharing websites like Airbnb offer homeowners opportunities to rent their homes on a short-term basis. These online platforms operate as intermediaries by offering owners a forum to advertise their properties, helping prospective renters find rooms and houses for temporary stays, and facilitating rental transactions. In June 2016 the City of Chicago enacted its Shared Housing Ordinance to regulate these short-term housing arrangements. The Ordinance imposes a range of requirements and restrictions, but all that is necessary here is a brief and general overview.

The Ordinance requires interested hosts to register with the City and acquire a business license before listing their

units for rent online. The licensing standards bring with them geographic eligibility requirements, restrictions on how many units within a larger building can be rented, and a list of buildings where such rentals are prohibited. Approved hosts are then subject to health, safety, and reporting requirements, including, for example, supplying clean linens and sanitized cooking utensils, disposing of waste and leftover food from host properties, and reporting illegal activity known to have occurred within a rented unit. Failure to comply subjects registered hosts to fines and other penalties, including revocation of their rental license.

B

Keep Chicago Livable, a non-profit organization that focuses on educating home-sharing hosts, and individual plaintiffs challenged the constitutionality of the Ordinance in the district court. In their original complaint, Keep Chicago Livable and its president Benjamin Wolf alleged that the Ordinance violated the First Amendment by impermissibly restraining non-commercial speech as well as by compelling speech through content-based disclosure requirements. The complaint also characterized the Ordinance as "so prolix as to be incomprehensible" and thus void for vagueness under the Due Process Clause.

In February 2017 the City modified portions of the Ordinance, prompting Keep Chicago Livable and Wolf to file an amended complaint. The new complaint added five new individual plaintiffs and new claims alleging that the amended Ordinance offends not only their alleged First Amendment right to intimate and expressive association, but also the Equal Protection Clause by arbitrarily treating shared-

housing arrangements differently than guest suite and hotel rentals.

C

Before us are two appeals, which we have consolidated, from two orders entered by the district court. First, in the order leading to appeal No. 17-1656, the district court denied plaintiffs' motion for a preliminary injunction on their free speech and vagueness claims. The main thrust of the district court's reasoning was that the Ordinance regulates conduct—in particular, economic activity—not speech. And plaintiffs' vagueness challenge, the district court determined, was too undeveloped to warrant a preliminary injunction. Second, in the order leading to appeal No. 17-2846, the district court dismissed without prejudice the new claims added by and remaining in plaintiffs' amended complaint, stating that those claims could be refiled and revisited following this court's decision on the merits of the claims at issue in the first appeal.

Both parties devote their appellate briefs to debating whether the district court properly denied plaintiffs' request for a preliminary injunction. For their part, plaintiffs also spill considerable ink on the substance of their remaining claims, which the district court dismissed without prejudice and without addressing their merits. Neither party devoted attention to the threshold issue—federal subject matter jurisdiction—which leads us to vacate the district court's decisions.

II

Unsure from plaintiffs' complaints and the district court record whether any named plaintiff had the requisite injury or threat of injury to establish the standing necessary for federal subject matter jurisdiction, we raised the question at oral

argument and followed by ordering supplemental briefing. We invited the parties to supply information on the standing of not only each individual named as a plaintiff, but also Keep Chicago Livable as an organization.

## A

We begin with the individual plaintiffs. While the amended complaint names six individuals as plaintiffs, the requisite standing inquiry—"an essential and unchanging part of the case-or-controversy requirement of Article III"— proceeds person-by-person. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing requires a threefold demonstration of "(1) an injury in-fact; (2) fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable decision from the court." *Pavrati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010) (citing *Lujan*, 504 U.S. at 560– 61). The alleged injury must be not just "concrete and particularized," but also "actual and imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; see also *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016).

The necessity of demonstrating and maintaining standing does not subside as litigation proceeds. To the contrary, "standing must be present at all stages of the litigation, including on appeal." *Pavrati Corp.*, 630 F.3d at 516. Or, perhaps more precisely as applied here, the asserted injury in-fact (and thus the requirements of concreteness, particularity, actuality, and imminence) must remain throughout the litigation, lest a case or controversy cease to exist and become moot. See *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); see also *United States v. Accra Pac, Inc.*, 173 F.3d 630, 633 (7th Cir. 1999). The burden of making this showing—of demonstrating the requisite injury to invoke federal

jurisdiction—rests with the plaintiff. See *Spokeo*, 136 S. Ct. at 1547.

Using these standards, we cannot conclude with confidence that any named plaintiff *presently* has standing. We emphasize that our inquiry focuses on the here and now—standing at the time of these appeals—because meaningful time has passed since the original complaint was filed (in November 2016), and the plaintiffs' supplemental brief reveals that the passage of time has resulted in changed facts and circumstances for each of the six individuals named as plaintiffs in the amended complaint (filed in February 2017). Here is what we are able to discern:

- Benjamin Wolf served as Keep Chicago Livable's first president and, as alleged in the original complaint, not only used Airbnb to rent his home in Chicago, but also intended to continue doing so. According to plaintiffs' supplemental brief, however, Wolf has since sold his property in Chicago and moved to Ohio.

- Susan Maller lives in a Chicago apartment and, as alleged in the amended complaint, was precluded from listing it on Airbnb because of the "harassment of her building's property manager." Plaintiffs' supplemental brief does not further explain the harassment and merely states—without any additional allegation—that Maller has "ceased Airbnb operations due to the restrictions of the Shared Housing Ordinance."

- Danielle McCarron once lived in an apartment appearing on the City's Prohibited Buildings List but has since moved. And, as with Maller, plaintiffs' supplemental brief summarily says that, because of the City's Ordinance, she is no longer attempting to participate in Airbnb.

- Antoinette Wonsey lives in Chicago and, according to the amended complaint, is an "Airbnb host manager" who helps guests in her neighborhood find accommodations. Without any particularity, she alleges that she no longer engages in these activities because of the Ordinance.

- Monica Wolf lives in Kentucky but frequently visits Chicago and in the amended complaint alleged that the Ordinance limited her preferred rental options. Plaintiffs' supplemental brief indicates Wolf has not returned to Chicago, "having been denied full access to all hosts who would otherwise list on Airbnb."

- John Doe is a citizen of Canada who frequently used Airbnb to visit Chicago. In the amended complaint, he alleged that his ability to "associate with Chicagoans is inhibited by the Prohibited Buildings List." Plaintiffs' supplemental brief says that Doe, much like Monica Wolf, has not returned to Chicago since the Ordinance went into effect.

None of this adds up to the clear, requisite showing of an ongoing, concrete, and particularized injury caused by the

Ordinance and capable of being redressed by a favorable ruling in these appeals. No longer owning property in Chicago, Benjamin Wolf's claims have become moot; Maller, McCarron, and Wonsey allege with no particularity how the Ordinance (and not some other factor) is preventing or hampering any of their own home-sharing activities in Chicago; and the out-of-town renters, Monica Wolf and Doe, do not convey with sufficient clarity or particularity whether they still wish to visit Chicago and, if so, how the Ordinance is chilling or inhibiting them from doing so.

Our conclusion is narrow—limited to and confined by the information before us—and handicapped by neither party focusing on standing before these appeals. It may be on remand, perhaps following additional briefing or upon the filing of a second amended complaint, that at least one individual plaintiff is able to establish standing and thereby jumpstart this litigation, as the plaintiffs so plainly wish to do. But Article III's case or controversy mandate does not allow us to take the shortcut of moving to the merits of plaintiffs' claims before ensuring the presence of a plaintiff with standing. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–96 (1998).

B

We reach the same conclusion when turning our focus to Keep Chicago Livable. The organization is an Illinois non-profit corporation with the stated goal of educating Chicago hosts about compliance with state and local home-sharing laws. In its original and amended complaints, the organization alleged that the Ordinance burdens its ability "to perform its function of educating and advising hosts and putative hosts as to their proper rights and duties under this new law, while the aforementioned constitutional questions

remain unresolved." This allegation suggests that Keep Chicago Livable brought its lawsuit to vindicate an injury to the organization itself. But in its supplemental brief the organization states that it is suing not only "on its own behalf," but also "as a representative association" on behalf of its members. These distinctions matter.

If Keep Chicago Livable is suing to remedy an injury to the organization, the allegations in the original and amended complaints fall short of establishing standing. All Keep Chicago Livable contends, and even then only generally, is that the alleged uncertainty around the Ordinance's constitutionality burdens the organization's education and advocacy mission. But nowhere does the organization allege that it owns or rents property or otherwise engages in activity regulated or protected by the Ordinance. And none of the claims advanced in the original or amended complaints are cast in terms of injury to the organization; rather, and despite Keep Chicago Livable's insistence that it is suing for injuries to the organization, each claim is advanced in terms of injury to an individual's constitutional rights (whether under the First Amendment, Due Process Clause, or otherwise).

On these pleadings and this limited record, we cannot conclude that Keep Chicago Livable has alleged a concrete and particularized injury to the organization itself that would be redressed by the declaratory judgment or injunction sought in the original or amended complaints. It is not enough to contend (at least at the level of abstraction at which Keep Chicago Livable proceeds here) that the legal clarity that may come from a judicial ruling on any individual plaintiff's claims challenging the Ordinance would redress an injury to the organization itself.

The Supreme Court's decision in *Havens Realty Corp. v. Coleman* affords Keep Chicago Livable no refuge. 455 U.S. 363 (1982). In *Havens*, a non-profit organization dedicated to ensuring open housing brought claims under the Fair Housing Act alleging injury on the basis of having expended significant resources investigating and reporting racially-discriminatory housing practices by a realty company in a suburb of Richmond, Virginia. See *id*. at 369. The organization specifically contended that the realty company's practice of steering apartments on the basis of race hindered its institutional efforts to assist prospective tenants in realizing equal access to housing. See *id.* at 379. The Court concluded that these allegations were sufficient to confer standing on the organization, reasoning that "[s]uch concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests." *Id*.

The organizational injury alleged by Keep Chicago Livable is much less direct than the one before the Supreme Court in *Havens*. The original and amended complaints sound their contention of injury in no more than Keep Chicago Livable finding it difficult to advocate and educate on home-sharing in Chicago before a court rules on the individual plaintiffs' challenges to the constitutionality of the Ordinance. Nary a word in either complaint tethers any particular requirement of the Ordinance to a specific harm to the organization. And the only time Keep Chicago Livable mentioned a drain on its resources was in its supplemental brief on appeal, but even then at a high level of generality and without a clear nexus to any legally-protected right or interest of the organization. On the record before us, Keep Chicago

Livable has shown little more than a "mere interest in a problem." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).

A different analysis would apply if Keep Chicago Livable had brought suit on behalf of its members. The test for associational standing comes from the Supreme Court's decision in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977). To sue in a representative capacity, *Hunt* requires Keep Chicago Livable to show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in their lawsuit." *Id*. at 343.

Even if we assume Keep Chicago Livable brought suit on behalf of its members—an assumption at odds with the allegations within the four corners of the original and amended complaints—the organization cannot clear *Hunt*'s first hurdle. The organization is unable to identify an individual plaintiff with standing to bring any claim. See *Hope, Inc. v. DuPage Cnty., Ill.*, 738 F.2d 797, 814 (7th Cir. 1984). Indeed, at an even more basic level, the record leaves unclear whether any of the six named plaintiffs remain members of Keep Chicago Livable. So the organization's plea for associational standing runs into the same barrier the individual named plaintiffs cannot overcome on the present pleadings and record: there is not enough before us to conclude that any individual plaintiff presently has the requisite injury to establish standing.

Here, too, Keep Chicago Livable may be able to close the gap on remand. The organization, in a new round of pleading or other submissions, may be able to identify an individual

plaintiff with standing. And perhaps that will be enough to satisfy *Hunt* when combined with Keep Chicago Livable's existing allegations (in the original and amended complaints) about the organization's mission as well as the sworn statement submitted as part of the supplemental brief in this court by the organization's current president. All of this is appropriately reserved to the district court's assessment in the first instance.

C

The proper course in these circumstances is to vacate the district court's decisions and remand for a determination of standing. See, *e.g.*, *Tarpley v. Jeffers*, 96 F.3d 921, 924 (7th Cir. 1996). The district court has ample discretion to structure the proceedings in accordance with this opinion, including by permitting substitutions of new parties and a second amended complaint. Our sole observation is that the district court, if it determines that a plaintiff has standing, should afford the plaintiff one (and only one) opportunity to move for a preliminary injunction, with the court from there proceeding to final judgment as appropriate. We deny Keep Chicago Livable's request to reassign the case on remand.

For these reasons, we VACATE the district court's decisions and REMAND for further proceedings.