In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 22-2801

MICHAEL MOGAN,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, a Municipal Corporation, and
ROSCOE VILLAGE LOFTS CONDOMINIUM ASSOCIATION,
a Corporation,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-01846 — **Sara L. Ellis,** *Judge.*

———————————

ARGUED NOVEMBER 8, 2023 — DECIDED SEPTEMBER 20, 2024

———————————

Before ROVNER, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges.*

ROVNER, *Circuit Judge.* This case involves a challenge to the application of Chicago's Shared Housing Ordinance (the "Ordinance"). Michael Mogan, the owner of a condominium, brought claims against the City of Chicago and the homeowners association for his condominium unit, the

Roscoe Village Lofts Association ("the Roscoe Association"). He argued that he purchased and renovated his condominium unit, #307, with the intention of renting it through the shared-housing rental platform Airbnb, and that the Ordinance prevented him from listing it on Airbnb or other short term residential intermediary platforms. Mogan alleged that application of the Ordinance to Unit 307 constituted an unconstitutional taking and similarly was an inverse condemnation in violation of Illinois law. He also sought a declaratory judgment against the City and the Roscoe Association establishing that Roscoe Village Lofts and the City have a duty to allow him to lease Unit 307 on a weekly, monthly or annual basis on Airbnb, HomeAway or other home sharing websites. The district court dismissed the takings and inverse condemnation claims and declined to exercise jurisdiction over any remaining state law claim, and he now appeals. We hold that the district court properly dismissed the case and did not abuse its discretion in declining to exercise supplemental jurisdiction over remaining state law claims.

The Ordinance at issue in this case provides, in relevant part, that condominium homeowners associations may determine that no licensed vacation rentals or shared housing units (defined as short term rentals) are permitted to operate anywhere within the building, and the association may notify the Commissioner of Business Affairs and Consumer Protection of that decision. Municipal Code of Chicago (MCC) § 4-13-260(a)(9). When that occurs, the building is added to the "prohibited buildings list," and units in the building may not be registered with the City as shared housing units or vacation rentals or listed on intermediary platforms such as Airbnb. *Id*. at §§ 4-14-050(i), 4-6-300(h)(4), 4-13-260(a)(9). A

party can request a hearing to contest a unit's ineligibility and can appeal the final determination. *Id*. at § 4-13-260(b). If a host rents a unit that is on the prohibited buildings list 28 days after the final notice of ineligibility, the host can be subjected to a $5,000 fine per day that the violation continues. *Id*. at §§ 4-14-050(i), 4-6-300(h)(4). And if a host fails to remove an ineligible listing from a platform such as Airbnb after receiving the final ineligibility determination from the City, the host can be fined $5,000 per day that the violation continues. *Id*. at §§ 4-6-300(h)(4), 4-14-030(c). The City amended the Ordinance in 2020, adding a prohibition on rentals of less than ten hours, severely restricting single-night rentals, and limiting the maximum occupancy of shared housing units to two adults per guest room and one person per 125 feet of floor area of the unit. *Id*. at §§ 4-6-300(g)(5), 4-14-050(b).

The Roscoe Village Loft condominiums are managed by Property Solutions Chicago, and Pamela Chianelli is the secretary and shareholder of Property Solutions. In August 2016, the Roscoe Association and Chianelli sought the inclusion of the Roscoe Lofts on the City's prohibited buildings list, and the City added the building to the list that same month. Mogan argues that there was never a vote held by the Roscoe Association to authorize the placement of the building on that prohibited list.

By definition, "vacation rentals" and "shared housing units" under the Ordinance are units which are rented to transient guests, which in turn are defined as guests who rent the unit for less than 31 days. *Id*. at §§ 4-14-010, 4-6-300(a), 4-6-290(a). The Ordinance therefore applies to short term rentals of a month or less. Mogan argues that he purchased

the unit with the intent to lease it, and that he painted and carpeted his condominium unit, and spent thousands of dollars to furnish it, in order to generate leasing revenue. He contends that he rented his unit in the past, and that he intends to list his unit on Airbnb or other home sharing sites in the future so that he can lease or license his entire unit to guests on a nightly, weekly, monthly or annual basis. He also maintains that the value of the condominium on the sales market is significantly lower if it cannot be used as a short-term rental. In addition, he argues that prior to passage of the Ordinance and the placement of the building on the Prohibited Building List, he was able to conduct short term rentals of the unit, and that ability was a major part of his decision to purchase the property. Mogan further asserts that Chianelli has told him in the past that placing his unit on Airbnb is not permitted under the declarations and bylaws, and has threatened him with the possibility of fines being imposed by the City of Chicago for running ads on Airbnb's website.

Mogan brought claims against the City arguing that its Ordinance violates the takings clause of the Fifth Amendment and constitutes an inverse condemnation under the Illinois Constitution. He argues that the City's actions in prohibiting short-term rentals constituted a regulatory taking. The City contends that Mogan lacks standing for his claims against it, and in the alternative that the court properly found that he failed to state a valid claim.

In support of its claim that Mogan lacks standing to challenge the Ordinance, the City points to our decision in *Keep Chicago Livable v. City of Chicago*, 913 F.3d 618 (7th Cir. 2019), in which we held that each of the plaintiffs challenging

that same Ordinance lacked standing. In order to establish the "'irreducible constitutional minimum'" of standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Keep Chicago Livable*, 913 F.3d at 622. At the pleading stage, such as in this case, the plaintiff has the burden of clearly alleging facts that are sufficient to demonstrate each of those elements. *Keep Chicago Livable*, 913 F.3d at 623; *Spokeo*, 578 U.S. at 338. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339, quoting *Lujan*, 504 U.S. at 560.

In *Keep Chicago Livable*, we noted that standing must be present at all points in litigation, and the individual plaintiffs in that case failed to meet that standard. 913 F.3d at 622. One of the plaintiffs in that case, who had used Airbnb to rent his home, had then moved out of state and sold that home. *Id*. at 623. Other individual plaintiffs provided only a conclusory allegation that because of the Ordinance, they had ceased participating in home-sharing activities on Airbnb. *Id*. at 623–24. We held that the claim by the first person was moot, and the claims of the others failed to allege with any particularity how the Ordinance, and not some other factor, prevented their own home-sharing activities. *Id*.

In contrast, Mogan's allegations in his Second Amended Complaint include far more detail as to the adverse impact the Ordinance has had on him in the past and continues to

have on him presently. In that complaint, Mogan alleged an infringement on his ability to profitably rent his unit as a short-term rental and that he would rent his unit through home-sharing websites such as Airbnb absent the excessive fines imposed by the Ordinance. Mogan alleged that he purchased the unit to rent it, including on a short-term basis, and that he had already engaged in profitable short-term rentals at Unit 307 on a limited basis and would have continued to do so but for the Ordinance. In fact, he alleged that the ability to list Unit 307 on all available online platforms was a major part of his decision to purchase the property, and that he had relied on rental income to pay for Unit 307 in the past. He alleged that using Unit 307 as a short-term rental on online platforms such as Airbnb benefitted him by allowing him to use Unit 307 as a second, vacation, home while collecting short-term rental income to pay for the unit.

He asserted that the property had lost significant value because the ability to rent short-term on online platforms such as Airbnb enabled him to obtain a premium price. Specifically, he noted that in the past, for rental terms of one month, six months, or a year, on websites such as Craigslist he could only rent Unit 307 for $1600 per month, whereas the average monthly rental for a similar unit on Airbnb's website was $3200 and the average nightly rate was $120. Accordingly, he alleged that he lost approximately $1600 a month between December 2019 and January 2022, or $41,600, because the City would not permit him to rent on online platforms such as Airbnb, and that the lost profits continue daily and monthly. He also alleged that the possible rental of Unit 307 on other online platforms for the lower amount would not justify the price he paid for Unit 307, whereas rental through Airbnb is a profitable venture. He stated that

his fixed mortgage was scheduled to be paid off in 26 years, but that if permitted to earn the higher daily and monthly rental income used by Airbnb users, he would have been able to pay off the principal balance in less than seven years, with substantial savings in interest paid. Furthermore, he asserted that the ability to list a rental on Airbnb increases the property value of a unit, and the City's prohibition of short-term leasing on online platforms such as Airbnb decreased the value of Unit 307. He stated that the fair market value of Unit 307 is approximately 50% higher if short-term rentals are permitted on online platforms such as Airbnb, and specified that Unit 307 is worth $270,000 and would be worth $400,000 based on the ability to rent Unit 307 on a short-term basis on Airbnb.

He also detailed the impact of the fines imposed by the Ordinance. He explained that the Ordinance requires the owner of a shared housing unit to register annually with the City and that the registration is a prerequisite to the ability of the person to establish and maintain a listing of a "Shared Housing Unit" on internet platforms such as Airbnb and HomeAway. Any person who fails to list a registration number in his short term rental listing online is at risk of being deemed ineligible to be a shared housing host and is subject to fines from a minimum of $1500 to $3000 for each offense— where each day of a violation constitutes a separate offense. Moreover, he noted that the failure to remove a listing for a unit in a building on a prohibited building list can subject an owner to inordinate fines of up to $5000 per day for each day that the listing is online, even if the condominium instruments allow such activity. He noted that the risk of the fine is real, and that Chianelli threatened him with the possibilities of fines being imposed by the City for allegedly running ads on

Airbnb's website. Finally, he alleged that, but for the City's prohibition on short-term rentals and extremely high fines, he would conduct short-term rentals at Unit 307.

Those allegations demonstrate standing to challenge the Ordinance. Mogan establishes that he rented his unit in the past and will do so in the future, that the profitability of short-term renting is directly impacted by the ability to list on platforms such as Airbnb, that the excessive fines provided for in the Ordinance have deterred him from listing his unit currently, and that he would conduct short-term rentals of his unit on platforms such as Airbnb absent that Ordinance. He also demonstrates that the inability to list his unit on Airbnb under the Ordinance has an impact on the market value of his unit. Those allegations are sufficient to allege an injury in fact fairly traceable to the challenged conduct of the defendant and likely to be redressed by a favorable judicial decision.

We turn, then, to the merits of the claims asserted in his Second Amended Complaint, which included claims against the City alleging a taking in violation of the Fifth Amendment and inverse condemnation under Illinois law, and a claim for declaratory judgment against the City and the Roscoe Association. Mogan argues that the district court erred in holding that prohibiting short term rentals denied only one bundle of property rights and did not rise to the level of a regulatory taking, and in rejecting his takings and inverse condemnation claims on that basis. He then reasons that because the court erred in dismissing those claims, it also improperly determined that there was no basis remaining for a declaratory judgment against the City and declined to exercise supplemental jurisdiction over the remaining state law claims.

Mogan argues that he cannot afford Unit 307 without short term rental income because it is impossible to sustainably lease Unit 307 under long-term leases and long-term rental income is much lower than short-term rental income. He describes the property right at stake here as including his right to use and rent Unit 307 for less than 30 days, and challenges the City's authority to interfere with or restrict that right when, according to Mogan, such rentals are permitted under the Roscoe Village Lofts bylaws and Declaration and the City had not regulated short term rentals for over 180 years. He contends that the City's restrictions on short-term rentals and its penalties for such rentals constitute an unlawful regulatory taking.

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, ensures that private property not be taken for public use without just compensation. *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017). That language does not directly address the situation in which property is not directly taken but where significant regulatory burdens are imposed on private property that impede its use. *Id*. The Supreme Court has long recognized, however, that "'while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.'" *Id*. at 393, quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). Accordingly, subject to certain exceptions, "a regulation which denies all economically beneficial or productive use of land will require compensation under the Takings Clause." *Id*. at 393 (internal quotations marks omitted). Moreover, "when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on 'a complex of factors,' including (1) the economic

impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id*. That test for regulatory taking necessarily requires a comparison of the value that has been taken from the property with the value that remains in it, and therefore a critical question is to define the unit of property and the extent that a portion has been taken. *Id*. at 395.

Before addressing the legal issues, there is a factual issue that needs to be highlighted because it is important to the resolution of the claims. When Mogan purchased his condominium unit in the building in 2004, his rights with respect to the unit were subject to the Declaration of Condominium Ownership ("Declaration") and by-laws of the Roscoe Association, which were recorded with the Cook County Recorder of Deeds in 1993. Therefore, from the time of his purchase of that property, his ability to rent out his unit was subject to any restrictions in those documents. Mogan's original complaint, First Amended Complaint, and Second Amended Complaint, all misrepresented the language in the Declaration, and the district court used that inaccurate language in its Opinion and Order. Mogan attached the actual Declaration to his original complaint, and the difference in the language is apparent when comparing that with the quote in the complaint. Mogan in his complaints set forth the relevant section from the Declaration, entitled "Lease of Units or Sublease or Assignment of Lease thereof," quoting it in whole, but misquoting the controlling sentence. The Declaration begins by stating that "[a]ny Unit Owner shall have the right to lease … his Unit, upon such terms and conditions as the Unit Owner may deem acceptable," but then

qualifies that right with an exception. Mogan quoted the Declaration's exception as follows:

> except that no Unit shall be leased, subleased or assigned for transient or hotel purposes, which are hereby defined as being for a period of less than thirty (30) days where hotel services normally furnished by a hotel (such as room service and maid service) are furnished.

Mogan then argued to the district court that he never provided room service or maid service, and therefore that under the terms of the Declaration he had an expectation that he would be allowed to pursue short-term rentals of his unit. But the actual language in the Declaration is materially different, and eviscerates his claim of an expectation of engaging in short-term rentals. The Declaration, which was attached as an exhibit to his original complaint, sets forth the leasing exception as follows:

> except that no Unit shall be leased, subleased or assigned for transient or hotel purposes, which are hereby defined as being for a period of less than thirty (30) days **or for a period of more than thirty (30) days** where hotels services normally furnished by a hotel (such as room service and maid service) are furnished.

(emphasis added).

The bolded language is missing from the body of the complaints, and no ellipsis is used to indicate its omission. The district court's order then tracked the erroneous language in the complaints, but that omitted language changes the meaning significantly. Under Mogan's versions, leases for

less than 30 days are allowed unless hotel services are provided. He then alleged in the complaints that he had not provided in the past such services normally provided by hotels, nor did he intend to do so in the future.

But the actual language of the Declaration provides that no leases of less than 30 days are allowed, and no leases for more than 30 days are allowed where hotel services are furnished. The "hotel services" language clearly modifies only the leases of more than 30 days, because otherwise the distinction between leases of less than 30 days and more than 30 days would have no meaning. Transient leases and hotel leases are prohibited, and that includes: (a) any leases of less than 30 days; and (b) any leases of more than 30 days where hotel services are provided. "Transient" rentals are similarly defined in the Ordinance in this case as rentals for less than a month. Based on the plain language of the Declaration, which controlled the rights and expectations of persons purchasing a condominium unit in that building, Mogan was aware from the time that he purchased Unit 307 that he had no right to lease the unit for periods of less than 30 days, and in fact was prohibited from doing so.

And that defeats his claims under the takings clause or inverse condemnation. Considering the factors for a regulatory taking, in light of the language in the Declaration prohibiting short-term rentals of less than 30 days, Mogan cannot demonstrate any economic impact of the Ordinance on him, nor can he demonstrate that the Ordinance has interfered with any reasonable investment-backed expectations. In fact, not only did he lack any such reasonable expectation, he would have been on actual notice before purchasing the property that leases of less than 30 days are

not allowed. And the Ordinance challenged here, and the prohibited buildings list, applies only to short-term leases of less than 31 days.

Mogan argues that he in fact rented the unit on a short-term basis, but that does not change the nature of the property interest he possessed. We need not consider whether the Roscoe Association "allowed" such short-term rentals to occur because of ignorance, indifference, incompetence, or tacit acceptance. Even if Mogan was able to pursue such short-term rentals of Unit 307 for a time, the Declaration at the time of the purchase made clear that the unit could not be rented for periods of less than 30 days. Therefore, the property interest that he obtained in the unit never included the right of short-term rentals, and in fact expressly excluded that right. Because the property was restricted in that manner from the outset and the Declaration was never changed, he never experienced any adverse economic impact from the Ordinance, nor any interference with distinct investment-backed expectation because he never had any reasonable expectation that the property could be used for short-term rentals. Accordingly, the district court properly dismissed his takings clause claim. Mogan raises no independent argument as to the inverse condemnation claim, conceding that the inverse condemnation claim applies the same standard as the takings clause claim and therefore that claim was properly dismissed as well. The district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the remaining state law claim, given its dismissal of the federal claims. See *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009) (recognizing that a district court's

decision as to whether to exercise supplemental jurisdiction is purely discretionary and is reviewed for abuse of discretion).

The decision of the district court is AFFIRMED.